# Exhibit F



January 29, 2024

Mr. Charlie Baker, President
National Collegiate Athletic Association
700 W. Washington Street
P.O. Box 6222
Indianapolis, IN  46206-6222

Dear President Baker:

The leaders of intercollegiate athletics owe it to student-athletes and their families to establish clear rules and to act in their best interest. Instead, two and a half years of vague and contradictory NCAA memos, emails and "guidance" about name, image and likeness (NIL) has created extraordinary chaos that student-athletes and institutions are struggling to navigate. In short, the NCAA is failing.

Earlier today, a team from the University of Tennessee met with members of your enforcement staff to discuss allegations the NCAA intends to bring against Tennessee related to NIL. We appreciate your staff listening to our arguments and agreeing to evaluate them. The NCAA's allegations are factually untrue and procedurally flawed. Moreover, it is intellectually dishonest for the NCAA enforcement staff to pursue infractions cases as if student-athletes have no NIL rights and as if institutions all have been functioning post-*Alston* with a clear and unchanging set of rules and willfully violating them.

It would have been my preference to discuss my concerns with you in person. Your recent testimony before Congress indicated you wanted to meet with as many member institutions and student-athletes as possible to discuss issues associated with college sports. I am sharing my perspective in writing since my December request for you to meet with me and our Athletics Director, Danny White, was denied.

As you have seen in our previous dealings with the NCAA, when we are wrong at the University of Tennessee, we admit it. We spent more than $1 million on outside counsel to investigate previous problems discovered in our football program that were reported to me, personally, and self-reported the entire case to the NCAA. In fact, just last year, the Division I Committee on Infractions as well as the NCAA enforcement staff cited exemplary cooperation by the University of Tennessee and said we set the standard other schools should follow. It is inconceivable that our institution's leadership would be cited as an example of exemplary leadership in July 2023, then as a cautionary example of a lack of institutional control only six months later.

Office of the Chancellor
800 Andy Holt Tower   1331 Circle Park Drive   Knoxville, TN 37996-0180
865-974-2444   chancellor.utk.edu

*Flagship Campus of the University of Tennessee System*

**We owe it to student-athletes and their families to have clear rules.**

Student-athletes, prospective student-athletes, parents, coaches, NCAA member institutions, collectives, and anyone working in college athletics today need to have clear rules to follow. As you acknowledged in the recent congressional hearing, the NIL guidance from the NCAA to student-athletes and institutions has been "inconsistent and unclear, and the ambiguity has filled schools, student-athletes, and collectives with uncertainty about how to follow the rules."

Regrettably, in this chaotic environment, the NCAA enforcement staff is trying to *retroactively* apply unclear guidance to punish and make an example of our institution and others, despite the fact that:

- The University of Tennessee complied with the interim NIL policy and guidance as it was put into place by the NCAA. No member institution could follow future guidance prior to it being given, let alone interpreted.

- Not one University of Tennessee employee has been named as committing any NIL violation.

- Neither the collective nor student-athletes broke any rule or guidance document as they existed at the time any actions were taken.

- The NCAA enforcement staff's intended processing of the proposed allegations is replete with legal and procedural defects, including unsettled and outstanding interpretive questions that require further attention and input from the NCAA membership, particularly given the novel nature of the issue and the gravity of such determinations. Further, some of the allegations are simply factually untrue.

The implications of the NCAA enforcement staff's approach to date goes beyond just our institution, but also could harm many more student-athletes who have done nothing wrong – all based on the administrative disputes of adults. This is morally wrong and undermines the credibility of the NCAA's stated interest of acting in the best interest of student-athletes.

**The NCAA owes member institutions a spirit of partnership in problem-solving.**

No one wants the chaos that currently exists, but it is where we find ourselves. The NCAA and its members need to redefine their relationship to create proactive partnerships that actually help solve the problems facing intercollegiate athletics. Rather than partnering with institutions – including institutions like ours that the NCAA has cited for "exemplary leadership" – the NCAA enforcement staff appears to be trying to bully institutions back to a time before the *Alston* decision, which will inevitably lead to more lawsuits. What I don't think the NCAA has embraced to date is how the actions of the enforcement staff in pursuing NIL enforcement is a continuation of the resistance to compensating student-athletes, a predisposition that led to the *Alston* decision and all the other lawsuits now facing the NCAA.

Rather than thoughtfully engage with its members in pursuit of a workable framework, the NCAA has embarked on a campaign of legislation by enforcement. Just this month, Jon Duncan expressed that the NCAA enforcement staff is preparing to bring a number of NIL cases in the coming months. Prior to doing so, the NCAA staff laid the procedural groundwork to make it easier to pursue NIL cases without the benefit of facts by pushing a presumption of guilt bylaw through by a voice vote of only 23 member representatives in "a separate governance process" in the bylaws that can only be used for non-

Page 3

controversial or emergency measures. A "guilty until proven innocent" standard is not partnership, is not problem-solving and violates the core principle in our country's justice system of "innocent until proven guilty."

**The NCAA and member institutions owe it to the public and all stakeholders to be intellectually honest.**

It is intellectually dishonest for the NCAA staff to issue guidelines that say a third-party collective/business may meet with prospective student-athletes, discuss NIL, even enter into a contract with prospective student-athletes, but at the same time say that the collective may not engage in conversations that would be of a recruiting nature. Any discussion about NIL might factor into a prospective student-athlete's decision to attend an institution. This creates an inherently unworkable situation, and everyone knows it.

Student-athletes and their families deserve better than this, as do the universities and athletic departments trying to manage and follow the rules.

We emphasized to the NCAA enforcement staff that the actions they are considering are contradictory with and will undermine the vision and "new day" that you yourself have laid out for NIL.

The University of Tennessee has cooperated with the NCAA in the past when some of our coaches and their staff were in the wrong, and we will continue to do that. We have been held up as a model for how institutions should handle infractions. We have complied with NIL guidance as it came out. We will be resolute in protecting the rights of our student-athletes and in upholding the integrity of our institution.

Regards,

Donde Plowman
Chancellor