# Exhibit I



# January 2024 NCAA Division I Council-Governance Publication of Proposed Legislation

# DIVISION I
# LEGISLATION



THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION
P.O. Box 6222
Indianapolis, Indiana 46206-6222
317/917-6222
NCAA.org
October 2023

**Legislation Prepared By:** Emily Capehart, *Associate Director of Academic and Membership Affairs,* Karen Metzger, *Associate Director of Academic and Membership Affairs* and Leeland Zeller, *Director of Division I.*

NCAA, NCAA logo and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION are registered marks of the Association and use in any manner is prohibited unless prior approval is obtained from the Association.

**January 2024 NCAA Division I Council-Governance Publication of Proposed Legislation**

The Council-Governance POPL presents all proposed amendments to the NCAA legislation in areas of Council governance that have been properly introduced for final review during the January 10, 2024, Division I Council meeting.

The publication is updated from the Legislative Services Database for the Internet (LSDBi) once a day. As modifications or corrections are made to proposals during the sponsor modification period, updates will be made to LSDBi and those changes will be reflected in the POPL.

Because changes to the POPL will occur on a regular basis, there is no table of contents or index; however, users may use the "Bookmark" feature of the Adobe Reader to quickly scan the proposal numbers and titles and go directly to those proposals within the document. Users may also use the "Search" feature to find particular proposals. The proposals are presented by topical area by bylaw numbers and by proposal number within topical areas.

**Legislative Process for the January 2024 Legislative Cycle**

Key Dates

**October 12, 2023**: Introduction Deadline.

**October 18, 2023**: Publication of Proposed Legislation.

**Week of November 26, 2023**: Sport Oversight Action/Review and NCAA Division I Legislative Committee Review.

**December 6, 2023:** Publication of the January 2024 Official Notice.

**January 10, 2024**: Division I Council Action/Review.

Legislative Process for Sport Oversight Committees to Consider Legislation in Specified Areas.

Sport oversight committees have authority to adopt legislation related to the sports in specified areas. Legislation adopted in the specified areas is not considered final and effective until the conclusion of the January 10, 2024, Division I Council meeting. The areas in which sport oversight committees have authority to adopt legislation are:

1. Conduct of athletics personnel (NCAA Bylaw 11);
2. Recruiting (Bylaw 13);
3. Playing and practice seasons (Bylaw 17);
4. Processes and procedures related to the administration of the regular season and championship (Bylaw 31); and
5. Sportsmanship and other ethical behaviors.

The following proposals are included in this process: Proposal Nos. 2023-44, 2023-45, 2023-46, 2023-47, 2023-48 and 2023-49.

Legislative Process for the Council to Consider Legislation in Other Areas.

A sport oversight committee or the council may introduce legislative proposals in areas other than those for which the sport oversight committees have authority. Other standing committees may recommend that the council introduce legislative proposals. After an initial comment period a sport oversight committee may modify a proposal it introduced. The NCAA Division I Legislative Committee will review proposals and provide feedback to oversight committees and the council. The Council will consider legislative proposals during its January 10, 2024, meeting.

[Note: In the following proposals, those letters and words that appear in *italics* and ~~strikethrough~~ are to be deleted; those letters and words that appear in **bold** and are <u>underlined</u> are to be added; and those words that appear in normal text are unchanged from the current Division I legislation.]

No. 2023-44  RECRUITING -- OFFICIAL VISITS -- NUMBER OF OFFICIAL VISITS -- INSTITUTIONAL LIMIT -- FOOTBALL

**Intent:** In football, to specify an institution may provide 70 official visits on an annual basis (April 1 through March 31) and to eliminate the head coaching change and unused visits exceptions.

**Bylaws:** Amend 13.6, as follows:

[Federated provision, FBS and FCS, divided vote]

13.6 Official (Paid) Visit.

[13.6.1 through 13.6.2 unchanged.]

13.6.2.2 Number of Official Visits -- Institutional Limitations. An institution may finance one visit to its campus for a prospective student-athlete before October 15 following completion of high school and one visit beginning October 15 following completion of high school, including a visit related to a possible transfer. [D]

[13.6.2.2.1 through 13.6.2.2.4 unchanged.]

13.6.2.2.5 Football. In football, an institution may provide 56**70** official visits on an annual basis (April 1 through March 31). The institution must maintain a written record of the visits provided. [D]

*13.6.2.2.5.1 Unused Visits -- Football. In football, an institution may retain a maximum of six unused visits from the previous year. Such visits may be used only during the following year.* [D]

13.6.2.2.5.2**1** National Service Academies and Institutions That Do Not Subscribe to the National Letter of Intent. A national service academy or an institution that does not subscribe to the National Letter of Intent may provide 70**84** official visits, 56**70** of which may be provided prior to the initial date of the regular signing period of the National Letter of Intent. An official visit provided to a senior prospective student-athlete April 1 through July 31 may count toward the previous year's limit.

[13.6.2.2.6 unchanged.]

13.6.2.2.7 Head Coaching Change. In baseball, **and** basketball ~~and football~~, an institution may provide additional official visits (up to 25 percent of the limitation for the particular sport) after a new head coach is hired, provided the previous head coach used 75 percent or more of the official visits permitted for that academic year. [D]

[13.6.2.3 through 13.6.2.5 unchanged.]

[13.6.3 through 13.6.9 unchanged.]

**Source:** NCAA Division I Football Bowl Subdivision Oversight Committee and NCAA Division I Football Championship Subdivision Oversight Committee

**Effective Date:** April 1, 2024

**Category:** Amendment

**Topical Area:** Recruiting

**Rationale:** Recent legislative changes to the one-time transfer exception, notification of transfer windows and the annual signing and initial counter limits legislation require an increase in the annual number of official visits an institution may provide. Further, to promote responsible recruiting practices on an annual basis, this proposal eliminates the exceptions that provide an institution additional visits if there are unused visits during the previous year and if there is a head coaching change.

**Division I Commitment addressed by proposal:** The Commitment to Responsible Recruiting Standards.

**Is the proposal consequential or nationally significant?:** Yes. The number of official visits an institution may provide in is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal eliminates the burdens of monitoring whether the head coaching change or unused visit exception applies and institutes a clear, consistent standard.

1

**How does the proposal support student-athlete success/well-being?:** Institutional official visit limits in football help to limit student-athlete time demands related to student host duties.

**Estimated Budget Impact:** Costs associated with an increased number of official visits.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** Time demands associated with student host duties for additional visits.

**Position Statement(s):**
  None

**History:**

        Oct 16, 2023:      In Progress

**No. 2023-45 RECRUITING -- PUBLICITY BEFORE COMMITMENT -- PHOTOGRAPHS DURING AN UNOFFICIAL VISIT -- FBS**

**Intent:** In bowl subdivision football, to specify that during an unofficial visit, an institution may not arrange for photographs or photograph a prospective student-athlete or those accompanying the prospective student-athlete.

**Bylaws:** Amend 13.10, as follows:

[Federated provision, FBS only]

13.10 Publicity.

13.10.1 Publicity Before Commitment.

    [13.10.1.1 through 13.10.1.6 unchanged.]

    13.10.1.7 Photograph of Prospective Student-Athlete. It is permissible for an institution to photograph a prospective student-athlete during a campus visit to be used in the institution's permissible publicity and promotional activities (e.g., press release, media guide) and the photograph may be provided to the prospective student-athlete. [D]

        **13.10.1.7.1 Exception -- Photographs During Unofficial Visits -- Bowl Subdivision Football. In bowl subdivision football, during an unofficial visit, an institution may not arrange for photographs or photograph a prospective student-athlete or those accompanying the prospective student-athlete.**

    [13.10.1.8 through 13.10.1.10 unchanged.]

[13.10.2 unchanged.]

**Source:** NCAA Division I Council (Football Bowl Subdivision Oversight Committee)

**Effective Date:** March 1, 2024

**Category:** Amendment

**Topical Area:** Recruiting

**Rationale:** This proposal would eliminate the distraction of photoshoots during unofficial visits and reduce staff and prospective student-athlete time spent on such activities. Rather than spending resources and time on photoshoots, institutions and prospective student-athletes would have more opportunities to focus on activities that assist the prospective student-athlete in making an informed recruiting decision (e.g., meetings with coaches and academic officials, gameday and campus experience, etc.).

**Division I Commitment addressed by proposal:** The Commitment to Responsible Recruiting Standards.

**Is the proposal consequential or nationally significant?:** Yes. Photographs taken of prospective student-athletes on visits to campus garner national attention.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. The reduction in resources and time spent outweighs the monitoring burden.

**How does the proposal support student-athlete success/well-being?:** Shifting the focus of unofficial visits to more substantive activities may result in better informed recruiting decisions.

**Estimated Budget Impact:** Cost savings associated with the reduction in photoshoots during unofficial visits.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
   None

**History:**

     Oct 16, 2023:     In Progress

| No. 2023-46 | RECRUITING -- MEN'S BASKETBALL RECRUITING CALENDAR |
|---|---|

**Intent:** In men's basketball, to revise legislation related to contacts and evaluations; international recruiting; and the recruiting calendar, as specified.

  **A.**  **Bylaws:** Amend 13.02.9, as follows:

13.02.9 Recruiting-Person Days -- Men's Basketball. In men's basketball, a recruiting-person day is defined as one coach engaged in an off-campus recruiting activity of a men's basketball prospective student-athlete on one day (12:01 a.m. to midnight); two coaches engaged in recruiting activities on the same day shall use two recruiting-person days. Men's basketball staff members shall not exceed 100 recruiting-person days September 1 through *May 31***April 30**.

    [13.02.9.1 through 13.02.9.2 unchanged.]

  **B.**  **Bylaws:** Amend 13.1, as follows:

13.1 Contacts and Evaluations. Recruiting contacts (per Bylaw 13.02.4) and telephone calls by institutional staff members or representatives of the institution's athletics interests are subject to the provisions set forth in this bylaw. [D]

13.1.1 Contactable Individuals.

    13.1.1.1 Time Period for Off-Campus Contacts -- General Rule. Off-campus recruiting contacts shall not be made with an individual (or the individual's family members) before August 1 at the beginning of the individual's junior year in high school. U.S. service academy exceptions to this provision are set forth in Bylaw 13.16.1. [D]

        [13.1.1.1.1 unchanged.]

        13.1.1.1.2 Exception -- Men's Basketball. In men's basketball, off-campus recruiting contacts shall not be made with an individual (or the individual's family members) before the opening day of the individual's junior year in high school. Contacts that occur during a prospective student-athlete's junior year during recruiting periods other than the April recruiting periods may occur only at the prospective student-athlete's educational institution. During the April recruiting periods *(including days of such a period in May)* of a prospective student-athlete's junior year, contacts may occur at either the prospective student-athlete's educational institution or residence. [D]

        [13.1.1.1.3 through 13.1.1.1.5 unchanged.]

        [13.1.1.2 through 13.1.1.3 unchanged.]

[13.1.2 through 13.1.3 unchanged.]

13.1.4 Visit to Prospective Student-Athlete's Educational Institution. Visits to a prospective student-athlete's educational institution that will occur during that portion of the day when classes are being conducted for all students must receive the approval of the executive officer (or the executive officer's designated representative) of the prospective student-athlete's educational institution. A coaching staff member may not visit a prospective student-athlete's educational institution during a dead period or recruiting shutdown. [D]

    13.1.4.1 Men's Basketball. In men's basketball, institutional staff members may visit a prospective student-athlete's educational institution on not more than one calendar day during a particular week within a recruiting period that occurs during the academic year, regardless of the number of prospective student-athletes enrolled in the institution or whether any prospective student-athlete is contacted on that day. During the *April***May** evaluation periods, if a nonscholastic event occurs at the educational institution of a participating prospective student-athlete, institutional staff members may visit the prospective student-athlete's educational institution on not more than one calendar day during a particular week (see Bylaw 13.1.4.4). During the June and July evaluation periods, there are no limitations on the number of times an institutional staff member may visit a prospective student-athlete's educational institution. [D]

Date Printed: 12/05/2023                                3

[13.1.4.1.1 unchanged.]

[13.1.4.2 through 13.1.4.4 unchanged.]

13.1.5 Contacts.

[13.1.5.1 through 13.1.5.3 unchanged.]

13.1.5.4 Men's Basketball. In men's basketball, each institution shall be limited to seven recruiting opportunities (contacts and evaluations combined) per prospective student-athlete per year (see Bylaw 13.1.5.7). A contact made during an official visit per Bylaw 13.6 or an unofficial visit per Bylaw 13.7.5 does not count as a recruiting opportunity. Men's basketball staff members shall not exceed 100 recruiting-person days September 1 through ~~May 31~~**April 30**. [D]

~~13.1.5.4.1 Exception -- April Evaluation Periods. An evaluation made during an April evaluation period shall not count as a recruiting opportunity.~~

[13.1.5.5 through 13.1.5.10 unchanged.]

[13.1.6 unchanged.]

13.1.7 Evaluations.

[13.1.7.1 through 13.1.7.4 unchanged.]

13.1.7.5 Evaluations -- Men's Basketball. In men's basketball, each institution shall be limited to seven recruiting opportunities (contacts and evaluations combined) during the academic year **(September 1 through April 30)** per prospective student-athlete (see Bylaws 13.1.5.4, 13.1.5.4.1, 13.1.5.7 and 13.1.5.10). Men's basketball coaching staff members shall not exceed 100 recruiting-person days September 1 through ~~May 31~~**April 30**. [D]

13.1.7.5.1 Academic Year Recruiting Periods. Evaluations of live athletics activities during the academic year recruiting periods shall be limited to: [D]

(a) Regularly scheduled high school, preparatory school and two-year college contests/tournaments and practices; ~~and~~

(b) Regular scholastic activities involving prospective student-athletes enrolled only at the institution where the regular scholastic activities occur**; and**

**(c) Regularly scheduled international scholastic team or nonscholastic team practice and competition**.

13.1.7.5.2 ~~April~~**May** Evaluation Period~~s~~. Evaluations of live athletics activities during the ~~April~~**May** evaluation period~~s~~ shall be limited to nonscholastic events that are certified per Bylaw 13.18. [D]

[13.1.7.5.3 through 13.1.7.5.7 unchanged.]

[13.1.7.6 through 13.1.7.18 unchanged.]

[13.1.8 through 13.1.10 unchanged.]

**C. Bylaws:** Amend 13.17, as follows:

13.17.2 Men's Basketball. The following periods of recruiting shall apply to men's basketball:

~~(a) September 9 through the Sunday beginning the week for the fall signing of the National Letter of Intent: Recruiting Period~~

~~(b) Monday through Thursday of the week that includes the initial date for the fall signing of the National Letter of Intent: Dead Period~~

~~(c) The Friday of the week for the fall signing of the National Letter of Intent through March 31 [except for (1) below and subject to 13.17.2-(e)]: Recruiting Period~~

~~(1) December 24 through December 26: Dead Period~~

~~(d) April 1 through the Wednesday immediately prior to the NCAA Division I Men's Basketball Championship game [applicable only if April 1 falls on a Monday, Tuesday or Wednesday]: Quiet Period~~

~~(e) The Thursday immediately prior to the NCAA Division I Men's Basketball Championship game to noon on the Thursday immediately after the game: Dead Period~~

*(f) Noon on the Thursday immediately after the NCAA Division I Men's Basketball Championship game through seven days following the initial date for the spring signing of the National Letter of Intent [except for (1) below and subject to 13.17.2-(g)-(1)]: Recruiting Period*

*(1) Monday through Thursday of the week that includes the initial date for the spring signing of the National Letter of Intent: Dead Period*

*(g) The eighth day after the initial date for the spring signing of the National Letter of Intent through July 5 [except for (1) through (5) below]: Quiet Period*

*(1) Up to two weekends in April (Friday through Sunday) other than Easter weekend and a weekend during which the PSAT, SAT or ACT national standardized tests are administered: Evaluation Periods (for certified events only)*

*(2) The four days immediately following each April evaluation period: Recruiting Period*

*(3) The day after the conclusion of the spring National Letter of Intent signing period through the Friday before the first permissible day to conduct institutional basketball camps [except for (i) below]: Dead Period*

*(i) National Basketball Association Draft Combine: Evaluation Period*

*(4) Two days of the National Basketball Players Association Top 100 Camp: Evaluation Period*

*(5) The final two Friday (noon) through Sunday (6 p.m.) periods in June: Evaluation Periods (for approved scholastic events only)*

*(h) July 6 through July 31 [except for (1) through (3) below]: Dead Period*

*(1) The first Thursday-Sunday period in July beginning on or after July 6: Evaluation Period*

*(2) The days when the College Basketball Academy is conducted: Evaluation Period (for College Basketball Academy only)*

*(3) The day after the conclusion of the College Basketball Academy through July 31: Quiet Period*

*(i) August 1 through September 8 [except for (1) below]: Quiet Period*

**(a) August 1 through the Tuesday immediately following Labor Day [except for (1) below]: Quiet Period**

(1) **August 6 through August 20: Dead Period**

**(b) The Wednesday after Labor Day through April 30 [except for (1) through (3) below]: Recruiting Period**

**(1) Monday through Thursday of the week that includes the initial date for the fall signing of the National Letter of Intent: Dead Period**

**(2) December 24-26: Dead Period**

**(3) The Thursday immediately prior to the NCAA Division I Men's Basketball Championship game through the Thursday immediately after the game: Dead Period**

**(c) May 1 through June 30 [except for (1) through (8) below]: Quiet Period**

**(1) The second Sunday in May (Mother's Day): Dead Period**

**(2) The Friday (6 p.m.) through Sunday (4 p.m.) immediately after Mother's Day: Evaluation Period (for certified events only)**

**(3) National Basketball Association Combine: Evaluation Period**

**(4) The Wednesday immediately before through the Sunday immediately after Memorial Day: Dead Period**

**(5) The third Sunday in June (Father's Day): Dead Period**

**(6) June 19: Dead Period**

**(7) Two days of the National Basketball Players Association Top 100 Camp: Evaluation Period**

**(8) The final two Friday (noon) through Sunday (6 p.m.) periods in June: Evaluation Periods (for approved scholastic events only)**

**(d) July 1-31 [except for (1) through (3) below]: Dead Period**

**(1) The first Thursday (8 a.m.) through Sunday (6 p.m.) in July after July 6: Evaluation Period**

**(2) The second Friday (6 p.m.) through Sunday (3 p.m.) in July after July 6: Evaluation Period**

**(3) The days when the College Basketball Academy is conducted: Evaluation Period (for College Basketball Academy only)**

**Source:** NCAA Division I Men's Basketball Oversight Committee

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Recruiting

**Rationale:** The NCAA Division I Men's Basketball Oversight Committee and the National Association of Basketball Coaches conducted a holistic review of the men's basketball recruiting calendar to address the current recruiting environment. Specifically, the men's basketball recruiting calendar was historically structured based on the vast majority of prospective student-athletes being recruited out of high school, preparatory school or two-year colleges. However, following the adoption of the one-time transfer exception in men's basketball, recruiting calendar changes are necessary to provide coaches the opportunity to meaningfully recruit both high school and transfer prospective student-athletes, as well as provide coaches additional time on campus to develop relationships and retain current student-athletes.

**Division I Commitment addressed by proposal:** The Commitment to Responsible Recruiting Standards.

**Is the proposal consequential or nationally significant?:** Yes. The men's basketball recruiting calendar is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** This proposal would result in a streamlined recruiting calendar that is easier for institutions to monitor and determine whether coaches are permitted to engage in off-campus recruiting.

**How does the proposal support student-athlete success/well-being?:** The recruiting calendar prioritizes coaches' presence on campus to develop relationships with current student-athletes while providing meaningful opportunities to engage in scholastic and nonscholastic recruiting activities.

**Estimated Budget Impact:** None.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
None

**History:**

Oct 16, 2023:      In Progress

No. 2023-47 RECRUITING -- CONTACT RESTRICTIONS AT SPECIFIED SITES -- PROSPECTIVE STUDENT-ATHLETE'S EDUCATIONAL INSTITUTION -- PERMIT CONTACT WHEN CLASSES ARE IN SESSION -- MEN'S BASKETBALL

**Intent:** In men's basketball, to eliminate the prohibition on contact at a prospective student-athlete's educational institution during the time of day when classes are in session.

**Bylaws:** Amend 13.1, as follows:

13.1 Contacts and Evaluations. Recruiting contacts (per Bylaw 13.02.4) and telephone calls by institutional staff members or representatives of the institution's athletics interests are subject to the provisions set forth in this bylaw. [D]

[13.1.1 through 13.1.5 unchanged.]

13.1.6 Contact Restrictions at Specified Sites.

13.1.6.1 Prospective Student-Athlete's Educational Institution. Any staff member desiring to contact a prospective student-athlete at the prospective student-athlete's high school, preparatory school or two-year college first shall obtain permission for such contact from that institution's executive officer (or the executive officer's authorized

representative). Contact may be made only when such permission is granted. Institutions also are bound by this provision when recruiting international prospective student-athletes. [D]

13.1.6.1.1 No Contact When Classes Are in Session -- **Women's** Basketball. In **women's** basketball, contact may not be made during the time of the day when classes are in session. For two-year colleges that conduct classes throughout the day, contact may not be made until after 4 p.m. local time and the prospective student-athlete shall not miss class for such contact. [D]

[13.1.6.2 through 13.1.6.3 unchanged.]

[13.1.7 through 13.1.10 unchanged.]

**Source:** NCAA Division I Men's Basketball Oversight Committee

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Recruiting

**Rationale:** The opportunity for men's basketball coaches to meet with prospective student-athletes at their educational institutions during the school day, alongside other academic stakeholders such as school administrators, teachers, counselors and coaches, supports the academic success of men's basketball prospective student-athletes. Additionally, eliminating the prohibition on contact at a prospective student-athlete's educational institution when classes are in session maintains the goal of the NCAA and its members to increase the scholastic influence and minimize the involvement of outside third parties in the recruiting process. Further, the current legislation, in all sports, requires an educational institution's executive officer to provide permission for an institution's coaching staff member to have contact with a prospective student-athlete at the educational institution. This requirement provides an appropriate guardrail that addresses disruptions to a prospective student-athlete's school day. Thus, the additional restriction placed on men's basketball coaches that contact may not occur at the prospective student-athlete's educational institution during the time of day when classes are in session is unnecessary and overly burdensome. This additional restriction results in men's basketball coaches being limited in travel options, which also takes time away from them being on campus and engaging in coaching and other important relationship building activities with their student-athletes during the playing season. Finally, this proposal was recommended by the National Association of Basketball Coaches.

**Division I Commitment addressed by proposal:** The Commitment to Responsible Recruiting Standards.

**Is the proposal consequential or nationally significant?:** Yes. Changes to men's basketball recruiting rules are consequential and nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal eliminates the burden of monitoring whether recruiting contact only occurs at a prospective student-athlete's educational institution when classes are not in session.

**How does the proposal support student-athlete success/well-being?:** Yes. Reducing the amount of time coaches spend away from campus on recruiting activities promotes student-athlete success and well-being.

**Estimated Budget Impact:** Potential reduction in recruiting travel costs.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
None

**History:**

Oct 16, 2023:        In Progress

**No. 2023-48 RECRUITING -- EVALUATIONS -- BASKETBALL -- JUNE EVALUATION PERIODS -- LOCATION OF SCHOLASTIC AND INTERCOLLEGIATE EVENTS**

**Intent:** In basketball, to specify that during the June evaluation periods, evaluations may be conducted at approved scholastic and intercollegiate events that occur at any location other than an NCAA Division I institution.

**Bylaws:** Amend 13.1, as follows:

13.1.7 Evaluations.

[13.1.7.1 through 13.1.7.4 unchanged.]

13.1.7.5 Evaluations -- Men's Basketball. In men's basketball, each institution shall be limited to seven recruiting opportunities (contacts and evaluations combined) during the academic year per prospective student-athlete (see Bylaws 13.1.5.4, 13.1.5.4.1, 13.1.5.7 and 13.1.5.10). Men's basketball coaching staff members shall not exceed 100 recruiting-person days September 1 through May 31. [D]

[13.1.7.5.1 through 13.1.7.5.2 unchanged.]

13.1.7.5.3 June Evaluation Periods. During the June evaluation periods, evaluations of live athletics activities are limited to: [D]

(a) Scholastic and intercollegiate events that:

(1) Are approved by the National Federation of State High School Associations, the NCAA (for events conducted by scholastic associations that are not members of the National Federation of State High School Associations) or an applicable two-year college governing body (NJCAA, CCCAA, NWAC);

(2) For events involving high school prospective student-athletes, are organized and conducted exclusively by the applicable state high school athletics association and/or state high school basketball coaches association (or if there is no state high school basketball coaches association, the state high school coaches association) or the applicable scholastic association that is not a member of the National Federation of State High School Associations. For events involving two-year college prospective student-athletes, are organized and conducted exclusively by the applicable two-year college governing body and/or two-year college coaches association; and

(3) Occur at ~~an educational institution (e.g., middle school, high school, two-year or four-year collegiate institution)~~ **any location** other than an NCAA Division I institution**, subject to current certification processes used by the National Federation of State High School Associations and the NCAA**.

[13.1.7.5.3-(b) unchanged.]

[13.1.7.5.4 through 13.1.7.5.7 unchanged.]

13.1.7.6 Evaluations -- Women's Basketball. In women's basketball, each institution shall be limited to seven recruiting opportunities (contacts and evaluations combined) per prospective student-athlete per year (see Bylaws 13.1.5.5 and 13.1.5.7). Women's basketball staff members shall not exceed 65 recruiting-person days each year (measured August 1 through July 31). A coach's involvement in off-campus recruiting activities during the April, May, June and July evaluation periods does not count toward the limitation on recruiting-person days. [D]

[13.1.7.6.1 unchanged.]

13.1.7.6.2 June Evaluation Period. During the June evaluation period, evaluations of live athletics activities are limited to: [D]

(a) Scholastic and intercollegiate events that:

(1) Are approved by the National Federation of State High School Associations, the NCAA (for events conducted by scholastic associations that are not members of the National Federation of State High School Associations) or an applicable two-year college governing body (NJCAA, CCCAA, NWAC);

(2) For events involving high school prospective student-athletes, are organized and conducted exclusively by the applicable state high school athletics association and/or state high school basketball coaches association (or if there is no state high school basketball coaches association, the state high school coaches association) or the applicable scholastic association that is not a member of the National Federation of State High School Associations. For events involving two-year college prospective student-athletes, are organized and conducted exclusively by the applicable two-year college governing body and/or two-year college coaches association; and

(3) Occur at ~~an educational institution (e.g., middle school, high school, two-year or four-year collegiate institution)~~ **any location** other than an NCAA Division I institution**, subject to current certification processes used by the National Federation of State High School Associations and the NCAA**.

[13.1.7.6.3 through 13.1.7.6.8 unchanged.]

[13.1.7.7 through 13.1.7.18 unchanged.]

**Source:** NCAA Division I Council (Men's and Women's Basketball Oversight Committees)

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Recruiting

**Rationale:** Expanding the locations where June scholastic events may occur would allow event operators to utilize larger facilities with multiple courts. Additionally, June scholastic events are still required to be certified pursuant to Bylaw 13.18. This proposal would make permanent a blanket waiver that was approved to permit June scholastic events to occur at any location other than an NCAA Division I institution.

**Division I Commitment addressed by proposal:** The Commitment to Responsible Recruiting Standards.

**Is the proposal consequential or nationally significant?:** Yes. June scholastic events are heavily attended by Division I basketball coaches.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. Expanding the permissible locations for June scholastic events does not add monitoring burdens.

**How does the proposal support student-athlete success/well-being?:** This proposal would provide additional options for hosting June scholastic events, which may result in additional recruiting opportunities.

**Estimated Budget Impact:** None.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
  None

**History:**

|          |             |
|----------|-------------|
| Oct 16, 2023: | In Progress |

---

## Playing and Practice Seasons

**No. 2023-49 PLAYING AND PRACTICE SEASONS -- OUTSIDE THE PLAYING SEASON -- SKILL INSTRUCTION -- PUBLICITY -- WOMEN'S BASKETBALL**

**Intent:** In women's basketball, to specify that skill-related instruction may be publicized and conducted in view of a general public audience.

**Bylaws:** Amend 17.1, as follows:

17.1 General Playing-Season Regulations.

[17.1.1 through 17.1.7 unchanged.]

17.1.7.2.2 Skill Instruction -- Sports Other Than Football. Participation by student-athletes in skill-related instruction in sports other than football is permitted outside the institution's declared playing season, from the institution's first day of classes of the academic year or September 15, whichever occurs earlier, to one week prior to the beginning of the institution's final examination period at the conclusion of the academic year [see Bylaw 17.1.7.2-(a)]. Skill-related instruction includes film review and team meetings related to technical and tactical instruction. In **men's** basketball, skill-related instruction shall not be publicized and shall not be conducted in view of a general public audience.

[17.1.7.2.3 through 17.1.7.2.4 unchanged.]

[17.1.7.3 through 17.1.7.12 unchanged.]

[17.1.8 through 17.1.9 unchanged.]

**Source:** NCAA Division I Women's Basketball Oversight Committee

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Playing and Practice Seasons

**Rationale:** This proposal was a recommendation from the NCAA Division I College Basketball Summer Initiative Working Group designed to enhance the presence of women's basketball during the summer. Allowing fans and community members to have this additional exposure to a basketball team outside a competition setting would assist with growing their support year round. Such individuals may also develop a greater appreciation for the team and share the appreciation with other potential fans. Also, the current rule applies only to basketball. As such, and with the growing popularity of women's basketball, the rule is difficult to monitor and enforce. An institution would have the discretion determine the level of access to skill instruction based on its individual circumstances. Finally, the Women's Basketball Coaches Association is supportive of this proposal.

**Division I Commitment addressed by proposal:** The Commitment to Value-Based Legislation.

**Is the proposal consequential or nationally significant?:** Yes. The effort to enhance the national audience for women's basketball is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal removes the monitoring burden associated with skill instruction.

**How does the proposal support student-athlete success/well-being?:** This proposal provides women's basketball student-athletes the opportunity to participate in skill instruction in expanded circumstances.

**Estimated Budget Impact:** None.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
   None

**History:**

   Oct 16, 2023:      In Progress

---

## Amateurism and Athletics Eligibility

---

No. 2023-50 AMATEURISM AND ATHLETICS ELIGIBILITY -- DELAYED ENROLLMENT -- LOW-LEVEL AND MINIMALLY ORGANIZED PARTICIPATION

**Intent:** In sports other than men's ice hockey and skiing, to specify that delayed enrollment penalties shall be based on the number of contests (or dates of competition) in which the student-athlete participated as a percentage of the maximum number of permissible contests (or dates of competition) in the sport per NCAA Bylaw 17 for each calendar year after the one-year period and prior to full-time collegiate enrollment in which the student-athlete has participated in organized competition, as specified.

**A. Bylaws:** Amend 12, as follows:

12 Amateurism and Athletics Eligibility

[12.01 through 12.7 unchanged.]

12.8 Seasons of Competition: Five-Year Rule. A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport (see Bylaws 12.02.6 and 14.3.3). An institution shall not permit a student-athlete to represent it in intercollegiate competition unless the individual completes all seasons of participation in all sports within the time periods specified below:

[12.8.1 through 12.8.2 unchanged.]

12.8.3 Criteria for Determining Season of Competition.

   [12.8.3.1 unchanged.]

   12.8.3.2 Delayed Enrollment -- Seasons of Competition.

      12.8.3.2.1 Sports Other Than Men's Ice Hockey, Skiing and Tennis. In sports other than men's ice hockey, skiing and tennis, a student-athlete who does not enroll in a collegiate institution as a full-time student in a regular academic term during a one-year period (by October 1 or March 1 immediately after one year has elapsed) after the student-athlete's high school graduation date or the graduation date of the student-

athlete's class (as determined by the first year of high school enrollment or the international equivalent as specified in the NCAA Guide to International Academic Standards for Athletics Eligibility and based on the prescribed educational path in the student-athlete's country), whichever occurs earlier, shall be subject to ~~the following:~~ **a delayed enrollment condition based on the number of contests (or dates of competition) in which the student-athlete participated as a percentage of the maximum number of permissible contests (or dates of competition) in the sport per NCAA Bylaw 17 for each calendar year after the one-year period and prior to full-time collegiate enrollment in which the student-athlete has participated in organized competition per Bylaw 12.02.9. (See Figure 12-2.)**

(a) *The student-athlete shall be charged with a season of intercollegiate eligibility for each calendar year after the one-year period and prior to full-time collegiate enrollment during which the student-athlete has participated in organized competition per Bylaw 12.02.9.*

(b) *After the one-year period, if the student-athlete has engaged in competition per Bylaw 12.02.9, on matriculation at the certifying institution, the student-athlete must fulfill an academic year of residence before being eligible to represent the institution in intercollegiate competition.*

[12.8.3.2.1.1 through 12.8.3.2.1.5 unchanged.]

12.8.3.2.2 Tennis. In tennis, a student-athlete who does not enroll in a collegiate institution as a full-time student in a regular academic term within six months ( by October 1 or March 1 immediately after six months have elapsed) after the student-athlete's high school graduation date or the graduation date of the student-athlete's class (as determined by the first year of high school enrollment or the international equivalent as specified in the NCAA Guide to International Academic Standards for Athletics Eligibility and based on the prescribed educational path in the student-athlete's country), whichever occurs earlier, shall be subject to ~~the following:~~**a delayed enrollment condition based on the number of contests (or dates of competition) in which the student-athlete participated as a percentage of the maximum number of permissible contests (or dates of competition) in the sport per NCAA Bylaw 17 for each calendar year after the one-year period and prior to full-time collegiate enrollment in which the student-athlete has participated in organized competition per Bylaw 12.02.9. (See Figure 12-2.)**

(a) *The student-athlete shall be charged with a season of intercollegiate eligibility for each calendar year after the six-month period has elapsed and prior to full-time collegiate enrollment during which the student-athlete has participated in organized competition per Bylaw 12.02.9.*

(b) *After the six-month period, if the student-athlete has engaged in organized competition per Bylaw 12.02.9, on matriculation at the certifying institution, the student-athlete must fulfill an academic year of residence before being eligible to represent the institution in intercollegiate competition.*

[12.8.3.2.2.1 through 12.8.3.2.2.4 unchanged.]

**12.8.3.2.3 Low-level and Minimally Organized Participation. A student-athlete may be granted relief from delayed enrollment conditions during the amateurism certification process for participation that meets the definition of organized competition (see Bylaw 12.02.9) but is determined to be low-level or minimally organized participation.**

[12.8.3.3 through 12.8.3.7 unchanged.]

[12.8.4 through 12.8.6 unchanged.]

[12.9 through 12.12 unchanged.]

**B. Bylaws:** Amend Bylaw Figure 12-2, as follows:

**2**

**FIGURE 12-2**
**Delayed Enrollment Conditions**

| Sport | Max | Contests | | Dates of Competition | |
|---|---|---|---|---|---|
| | | 20% | 50% | 20% | 50% |
| Acrobatics and Tumbling | 12 | | | 3 | 6 |
| Baseball | 56 | 12 | 28 | | |
| Basketball | 29 | 6 | 15 | | |
| Bowling, Women's | 32 | | | 7 | 16 |
| Cross Country | 7 | | | 2 | 4 |
| Equestrian, Women's | 15 | | | 3 | 8 |
| Fencing | 11 | | | 3 | 6 |
| Field Hockey | 20 | 4 | 10 | | |
| Football | | | | | |
| FBS | 12 | 3 | 6 | | |
| FCS | 11 | 3 | 6 | | |
| Golf | 24 | | | 5 | 12 |
| Gymnastics | 13 | | | 3 | 7 |
| Ice Hockey | 34 | 7 | 17 | | |
| Lacrosse | 17 | | | 4 | 9 |
| Rifle | 13 | | | 3 | 7 |
| Rowing, Women's | 20 | | | 4 | 10 |
| Rugby, Women's | 11 | 3 | 6 | | |
| Beach Volleyball, Women's | 16 | | | 4 | 8 |
| Skiing | 32 | | | 7 | 16 |
| Soccer | 20 | 4 | 10 | | |
| Softball | 56 | 12 | 28 | | |
| Swimming and Diving | 20 | | | 4 | 10 |
| Tennis | 25 | | | 5 | 13 |
| Track and Field | | | | | |
| Indoor | 9 | | | 2 | 5 |
| Outdoor | 9 | | | 2 | 5 |
| Triathlon, Women's | 6 | | | 2 | 3 |
| Volleyball, Men's | 28 | | | 6 | 14 |
| Volleyball, Women's | 32 | | | 7 | 16 |
| Water Polo | 21 | | | 5 | 11 |
| Wrestling | 16 | | | 4 | 8 |

| Percentage of Maximum Number of Contests/Dates of Competition | | |
|---|---|---|
| **Less than 20%** | **20% to 50%** | **Greater than 50%** |
| Apply a one-for-one withholding condition when the PSA competed in no more than 20% of the maximum number of contests or dates of competition during each 12-month period. | Charge one season of competition for each 12-month period in which the PSA competed in more than 20% but less than or equal to 50% of the maximum number of contests or dates of competition. | Require an academic year in residence and charge one season of competition for each 12-month period in which the PSA competed in at least 50% of the maximum number of contests or dates of competition. |

**Note**: When an individual participated in organized competition during more than one 12-month period beyond the legislated delayed period, staff will apply the guidelines on a year-by-year basis. Staff may not provide relief of the academic year of residence if the individual engaged in more than 50% of the maximum number of contests (dates of competition) in the applicable sport during any 12-month period of the delay.

**Source:** NCAA Division I Council (Student-Athlete Experience Committee)

**Effective Date:** August 1, 2024, for student-athletes initially enrolling full-time in a collegiate institution on or after August 1, 2024.

**Category:** Amendment

**Topical Area:** Amateurism and Athletics Eligibility

**Rationale:** Codifying existing Council-Approved Review Process Guidelines into the legislation promotes consistency with rules modernization initiatives and aligns legislation with preenrollment amateurism policies that have been applied since 2014-15. Although the policies are currently applied, codification of the guidelines simplifies educational messaging, promotes consistency and permits proactive guidance on avoiding a delayed-enrollment condition. If adopted, national office staff would continue to identify delayed enrollment conditions based on the amount of competition (other than low-level/minimally organized competition) in which the individual participated in each calendar year after the legislated grace period and prior to initial full-time collegiate enrollment during the amateurism certification process.

**Division I Commitment addressed by proposal:** The Commitment to Student-Athlete Well-Being.

**Is the proposal consequential or nationally significant?:** Yes. Application of delayed enrollment legislation is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. No monitoring burden.

**How does the proposal support student-athlete success/well-being?:** Codifying policy that provides incoming student-athletes relief from penalties assessed due to participation in low-level and minimally organized competition or national team competition prior to initial full-time collegiate enrollment supports student-athlete success and well-being.

**Estimated Budget Impact:** None.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
None

**History:**

Oct 16, 2023:          In Progress

---

## Athletics Eligibility

No. 2023-51 ACADEMIC ELIGIBILITY -- FRESHMAN ACADEMIC REQUIREMENTS -- CORE CURRICULUM REQUIREMENTS -- NONTRADITIONAL COURSE REQUIREMENTS

**Intent:** To incorporate criteria related to nontraditional courses into the definition of a core course, as specified.

**Bylaws:** Amend 14.3, as follows:

[Common provision, Divisions I and II only, divided vote]

14.3 Freshman Academic Requirements.

14.3.1 Eligibility for Financial Aid, Practice and Competition -- Qualifiers and Academic Redshirts. A student-athlete who enrolls in a member institution as an entering freshman with no previous full-time college attendance shall meet the following academic requirements, as certified by the NCAA Eligibility Center, as approved by the Board of Governors, and any applicable institutional and conference regulations, to be considered a qualifier or an academic redshirt.

[14.3.1.1 through 14.3.1.2 unchanged.]

14.3.1.3 Core-Curriculum Requirements. For purposes of meeting the core-curriculum requirement to establish eligibility at a member institution, a "core course" must meet all of the following criteria:

Date Printed: 12/05/2023                                                                                                                                    13

(a) A course must be a recognized academic course and qualify for high school graduation credit in one or a combination of the following areas: English, mathematics, natural/physical science, social science, foreign language or nondoctrinal religion/philosophy;

(b) A course must **meet college preparatory criteria for content (e.g., standards, learning objectives, competencies) and rigor of performance tasks and assessments (e.g., application of skills and concepts, strategic or extended thinking) as outlined by the NCAA High School Review Committee and must** be considered college preparatory by the high school. ~~College preparatory is defined for these purposes as any~~ **(a** course that prepares a student academically to enter a four-year collegiate institution upon graduation from high school**)**;

(c) A mathematics course must be at the level of Algebra I or a higher-level mathematics course;

(d) A course must be taught by a qualified instructor as defined by the appropriate academic authority (e.g., high school, school district or state agency with authority of such matters); ~~and~~

(e) A course must be taught at or above the high school's regular academic level (remedial, special education or compensatory courses shall not be considered core courses). However, the prohibition against the use of remedial or compensatory courses is not applicable to courses designed for students with education-impacting disabilities (see Bylaw 14.3.1.2.1.2)**;**

**(f) The high school that offers the course meets the criteria for validity (e.g., quality control and integrity of information, school policies and operations) as established by the High School Review Committee (see Bylaw 14.1.2.2); and**

**(g) The instructional model for the course meets the criteria for review (e.g., instructor interaction, pacing, instructional time, monitoring, feedback, intervention) as outlined by the High School Review Committee**.

[14.3.1.3.1 unchanged.]

~~14.3.1.3.2 Nontraditional Courses. Courses taught via the Internet, distance learning, independent study, individualized instruction, correspondence, and courses taught by similar means may be used to satisfy NCAA core-course requirements if all of the following conditions are satisfied:~~

~~(a) The course meets all requirements for a core course as defined in Bylaw 14.3.1.2;~~

~~(b) The instructor and the student have ongoing access to one another for purposes of teaching, evaluating and providing assistance to the student throughout the duration of the course;~~

~~(c) The instructor and the student have regular interaction with one another for purposes of teaching, evaluating and providing assistance to the student throughout the duration of the course;~~

~~(d) The student's work (e.g., exams, papers, assignments) is available for evaluation and validation;~~

~~(e) Evaluation of the student's work is conducted by the appropriate academic authorities in accordance with the high school's established academic policies;~~

~~(f) The course includes a defined time period for completion; and~~

~~(g) The course is acceptable for any student and is placed on the high school transcript.~~

[14.3.1.3.3 through 14.3.1.3.9 renumbered as 14.3.1.3.2 through 14.3.1.3.8, unchanged.]

[14.3.1.4 through 14.3.1.5 unchanged.]

[14.3.2 through 14.3.5 unchanged.]

**Source:** NCAA Division I Council (Committee on Academics)

**Effective Date:** August 1, 2024; for high school account, program or course reviews that occur on or after August 1, 2024.

**Category:** Amendment

**Topical Area:** Athletics Eligibility

**Rationale:** Initial eligibility requirements should align with current practices in secondary education, which has experienced significant shifts in recent years. When the nontraditional course requirements were adopted in 2010, online learning was not as prevalent and there were fewer standards for developing and implementing such

courses. These types of courses have become much more mainstream, especially during the COVID-19 pandemic, and many high schools continue to use them. Incorporating criteria related to nontraditional courses into the definition of a core course will align the initial-eligibility legislation with this shift while maintaining key elements of current core-course and nontraditional course requirements to ensure guardrails remain in place for learning environments that may be susceptible to abuse or academic integrity issues. The majority of the details and processes for the review of courses will be included in the policies and procedures of the High School Review Committee, which will be annually reviewed and approved by the Committee on Academics. In addition, maintaining this information in the High School Review Committee's policies and procedures will allow for updates to be made more quickly as the landscape evolves in secondary education.

**Division I Commitment addressed by proposal:** The Commitment to Sound Academic Standards.

**Is the proposal consequential or nationally significant?:** Yes. Core course requirements are nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal does not involve an additional monitoring burden.

**How does the proposal support student-athlete success/well-being?:** Aligning initial-eligibility legislation with the shifts in secondary education over recent years supports student-athlete success and well-being.

**Estimated Budget Impact:** None.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
    None

**History:**

        Oct 16, 2023:        In Progress

---

## Governance Structure and Committees

No. 2023-52 ACADEMIC ELIGIBILITY -- VALIDITY OF ACADEMIC CREDENTIALS -- ELIMINATION OF THE STUDENT RECORDS REVIEW COMMITTEE

**Intent:** To eliminate the NCAA Student Records Review Committee and transition its duties to the NCAA High School Review Committee.

**A.   Bylaws:** Amend 14.1, as follows:

14.1 Admission, Enrollment and Academic Credentials.

[14.1.1 unchanged.]

14.1.2 Validity of Academic Credentials. As a condition and obligation of membership, an institution is responsible for determining the validity of a student-athlete's academic record.

    [14.1.2.1 unchanged.]

    14.1.2.2 High School Review Committee. The High School Review Committee shall have the authority to establish policies and procedures related to ~~the academic review of~~ **reviewing the validity of a** high schools ~~and to determine the validity of a high school (e.g., core courses, curriculum, grades) for the purpose of meeting initial-eligibility requirements~~ **and the validity of a prospective student-athlete's academic credentials**. A review may result in a determination that a high school **or a prospective student-athlete's academic credentials** shall not be used ~~for the purpose of meeting~~ **to meet** initial-eligibility requirements. The **committee's** policies and procedures ~~for the review and determination of the validity of a high school~~ shall be approved by the Committee on Academics. (See Bylaw 21.9.4.)

    ~~14.1.2.3 Student Records Review Committee. The Student Records Review Committee shall have the authority to establish policies and procedures related to the review of a prospective student-athlete's academic credentials and to determine the validity of a prospective student-athlete's academic credentials for the purpose of meeting initial-eligibility requirements. A review may result in a determination that a prospective student-athlete's academic credentials shall not be used for the purpose of meeting initial-eligibility requirements. The policies and procedures for the review of academic credentials and the determination of the validity of such credentials shall be approved by the Committee on Academics. (See Bylaw 21.9.5.)~~

[14.1.2.4 renumbered as 14.1.2.3, unchanged.]

**B. Bylaws:** Amend 21.9, as follows:

[Common provision, Divisions I and II only, divided vote]

21.9 Common Committees -- Committees With Governance Administration Responsibilities.

[21.9.1 through 21.9.3 unchanged.]

21.9.4 High School Review Committee.

[21.9.4.1 unchanged.]

21.9.4.2 Duties. The committee shall have the authority to establish policies and procedures related to ~~the academic review of~~ **reviewing the validity of a** high schools ~~and to determine the validity of a high school (e.g., core courses, curriculum, grades) for the purpose of meeting initial-eligibility requirements~~ **and the validity of a prospective student-athlete's academic credentials**. A review may result in a determination that a high school **or a prospective student-athlete's academic credentials** shall not be used f~~or the purpose of meeting~~ **to meet** initial-eligibility requirements. The **committee's** policies and procedures ~~for the review and determination of the validity of a high school~~ shall be approved by the Division I Committee on Academics and the Division II Academic Requirements Committee. (See Bylaw 14.1.2.2.)

[21.9.4.3 through 21.9.4.4 unchanged.]

~~21.9.5 Student Records Review Committee.~~

~~21.9.5.1 Composition. The committee shall consist of nine members and shall be constituted as follows:~~

~~(a) One admissions officer of a Division I or Division II institution;~~

~~(b) One staff member of a Division I or Division II institution or conference office;~~

~~(c) One staff member of a Division I institution or conference;~~

~~(d) One representative from the Division II Academic Requirements Committee;~~

~~(e) Four representatives from the secondary-school community; and~~

~~(f) One member selected at large from either the secondary-school community or a Division I or II institution or conference office.~~

~~21.9.5.2 Duties. The committee shall have the authority to establish policies and procedures related to the review of a prospective student-athlete's academic credentials and to determine the validity of a prospective student-athlete's academic credentials for the purpose of meeting initial-eligibility requirements. A review may result in a determination that a prospective student-athlete's academic credentials shall not be used for the purpose of meeting initial-eligibility requirements. The policies and procedures for the review of academic credentials and the determination of the validity of such credentials shall be approved by the Division I Committee on Academics and the Division II Academic Requirements Committee. (See Bylaw 14.1.2.3.)~~

~~21.9.5.3 Terms. Committee members shall be appointed to one four-year term. A member's term of service shall commence on the first day of January following the member's appointment. A member may be appointed to one additional term. An individual who has served two terms may not be re-appointed. The term of service of the member serving on the Division II Academic Requirements Committee shall run concurrently with service on that committee.~~

~~21.9.5.4 Appeals. The committee determination shall be final, binding and conclusive and shall not be subject to further review by any other authority.~~

**C. Bylaws:** Amend 21.10.5, as follows:

21.10.5 Committees Reporting to the Committee on Academics.

[21.10.5.1 through 21.10.5.2 unchanged.]

21.10.5.3 Common Committees. The following committees shall report to the Committee on Academics regarding issues related to Division I:

(a) International-Student Records Committee; **and**

(b) High School Review Committee.*; and*

*(c) Student Records Review Committee.*

**Source:** NCAA Division I Council (Committee on Academics)

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Governance Structure and Committees

**Rationale:** This proposal streamlines the governance structure and ensures continued oversight regarding the validity of academic credentials. Following the removal of standardized test scores from initial-eligibility requirements, the Student Records Review Committee's remaining duties (identifying academic programs, reviewing academic credential validity) align with the High School Review Committee's duties (reviewing academic programs, evaluating revised transcripts). Eliminating the NCAA Student Records Committee and transitioning its remaining duties to the NCAA High School Review Committee promotes efficiency and effectiveness within the governance structure.

**Division I Commitment addressed by proposal:** The Commitment to Sound Academic Standards.

**Is the proposal consequential or nationally significant?:** Yes. Legislation related to initial-eligibility standards is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal would not increase monitoring burden.

**How does the proposal support student-athlete success/well-being?:** Continued effective oversight regarding the validity of academic credentials supports student-athlete academic success.

**Estimated Budget Impact:** Reduction in costs associated with the elimination of the High School Review Committee.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
    None

**History:**

       Oct 16, 2023:     In Progress

---

## Financial Aid

**No. 2023-53 FINANCIAL AID -- MAXIMUM INSTITUTIONAL GRANT-IN-AID LIMITATIONS BY SPORT -- WOMEN'S STUNT**

**Intent:** In women's stunt, to increase, from nine to 14, the value (equivalency) of financial aid awards that an institution may provide in an academic year to counters.

**Bylaws:** Amend 15.5, as follows:

15.5 Maximum Institutional Grant-in-Aid Limitations by Sport.

[15.5.1 through 15.5.2 unchanged.]

15.5.3 Equivalency Sports.

    15.5.3.1 Maximum Equivalency Limits.

      [15.5.3.1.1 unchanged.]

      15.5.3.1.2 Women's Sports. There shall be a limit on the value (equivalency) of financial aid awards (per Bylaw 15.02.5.2) that an institution may provide in any academic year to counters in the following women's sports:

| | | | |
|---|---|---|---|
| Acrobatics and Tumbling | 14 | Rugby | 12 |
| Bowling | 5 | Skiing | 7 |
| Cross Country/Track and Field | 18 | Soccer | 14 |
| Equestrian | 15 | Softball | 12 |
| Fencing | 5 | Stunt | ~~9~~ **14** |
| Field Hockey | 12 | Swimming and Diving | 14 |
| Golf | 6 | Triathlon | 6.5 |
| Lacrosse | 12 | Water Polo | 8 |
| Rowing | 20 | Wrestling | 10 |

[15.5.3.1.3 through 15.5.3.1.4 unchanged.]

[15.5.3.2 unchanged.]

[15.5.4 through 15.5.11 unchanged.]

**Source:** NCAA Division I Council (Strategic Vision and Planning Committee)

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Financial Aid

**Rationale:** Women's stunt has large rosters with an average of 26-50 student athletes. Like other sports with large rosters and higher equivalencies, women's stunt could benefit from a higher equivalency to help grow the sport and support student-athlete participation opportunities, particularly in the early stages of its emerging status. Acrobatics and tumbling (an emerging sport with similar athletics disciplines) has a similar roster size, on average, and its equivalency is 14. Further, increasing the maximum to 14 does not require institutions to provide the equivalent of 14 financial aid awards but allows institutions additional opportunities to support female student-athletes.

**Division I Commitment addressed by proposal:** The Commitment to Student-Athlete Well-Being.

**Is the proposal consequential or nationally significant?:** Yes. Providing additional opportunities for female student-athletes to receive financial aid is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal does not involve an additional monitoring burden.

**How does the proposal support student-athlete success/well-being?:** The opportunity to provide additional financial aid supports student-athlete success and well-being.

**Estimated Budget Impact:** Dependent on institutional decision-making.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
None

**History:**

Oct 16, 2023:     In Progress

---

## Awards, Benefits and Expenses

No. 2023-54     AWARDS, BENEFITS AND EXPENSES -- ELIGIBILITY TO RECEIVE AWARDS

**Intent:** To eliminate the restrictions that a student-athlete must be eligible to participate in the competition or championship event for the student-athlete to receive an award for participation in a special event or for winning a conference or national championship.

**Bylaws:** Amend 16.1, as follows:

16.1 Awards.

[16.1.1 through 16.1.3 unchanged.]

16.1.4 Types of Awards, Awarding Agencies, Maximum Value and Numbers of Awards. Athletics awards given to individual student-athletes shall be limited to those approved or administered by the member institution, its conference or an approved agency as specified in the following subsections and shall be limited in value and number as specified in this section. Awards received for intercollegiate athletics participation may not be sold, exchanged or assigned for another item of value, even if the student-athlete's name or picture does not appear on the award. Each of the following subsections is independent of the others so that it is permissible for an individual student-athlete to receive the awards described in all subsections. [R]

16.1.4.1 Participation Awards. Awards for participation in intercollegiate athletics may be presented each year, limited in value and number as specified in Figure 16-1. *Awards for participation in special events may be provided only to student-athletes eligible to participate in the competition.* [R]

[16.1.4.1.1 through 16.1.4.1.2 unchanged.]

16.1.4.2 Awards for Winning Conference and National Championships. Awards for winning an individual or team conference or national championship may be presented each year, limited in value and number as specified in Figure 16-2. *Awards for winning a conference or national championship in a team sport may be provided only to student-athletes who were eligible to participate in the championship event.* The total value of any single award received for a national championship may not exceed $415. The total value of any single award received for a conference championship may not exceed $325, and each permissible awarding agency is subject to a separate $325 limit per award. Each permissible awarding agency may provide only a single award for each championship to each student-athlete. Separate awards may be presented to both the regular-season conference champion and the postseason conference champion (with a separate $325 limitation), but if the same institution wins both the regular-season and postseason conference championship, the combined value of both awards shall not exceed $325. [R]

[16.1.4.3 through 16.1.4.5 unchanged.]

[16.1.5 through 16.1.7 unchanged.]

**Source:** NCAA Division I Council (Legislative Committee)

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Awards, Benefits and Expenses

**Rationale:** Current legislation prohibits a student-athlete who is ineligible for competition from receiving special event and postseason awards. A student-athlete who is ineligible for competition may still make meaningful contributions to an institution's athletics program, including postseason achievements. This proposal would allow institutions the discretion to recognize those achievements consistent with recognition provided to all other student-athletes. Note: Because this proposal would change autonomy legislation, adoption by the Division I Council would require an 80 percent majority as emergency legislation. This concept is an extension of previously considered NCAA Bylaw 16 recommendations that were made based on the charge of the Division I Transformation Committee to the Division I Legislative Committee.

**Division I Commitment addressed by proposal:** The Commitment to Value-Based Legislation.

**Is the proposal consequential or nationally significant?:** Yes. Legislation related to awards for student-athletes is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal reduces the monitoring burden of determining who may receive special achievement and championship awards.

**How does the proposal support student-athlete success/well-being?:** This proposal would allow institutions support student-athlete success and well-being by recognizing their contributions regardless of whether they are eligible for competition.

**Estimated Budget Impact:** Costs associated with the purchase of additional awards.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

Position Statement(s):
    None

History:

        Oct 16, 2023:      In Progress

## Infractions Program

**No. 2023-55      INFRACTIONS PROGRAM -- PENALTIES -- INDIVIDUAL ACCOUNTABILITY MEASURES**

**Intent:** To implement changes to Bylaw 19 to focus meaningful infractions penalties on the individuals responsible for the underlying rules violations, as specified.

**A.  Bylaws:** Amend 19.2, as follows:

19.2 Responsibility to Cooperate.

[19.2.1 through 19.2.2 unchanged.]

19.2.3 Immediate Penalties for Failure to Cooperate. The Committee on Infractions may prescribe immediate penalties during the investigation if an institution or individual fails to satisfy the responsibility to cooperate. In cases before the Committee on Infractions, the chair of the Committee on Infractions; a hearing panel generated at the request of the chair to review whether an institution or individual failed to satisfy the responsibility to cooperate; the chief hearing officer of a hearing panel assigned to review the case, if appointed by the chair; or the hearing panel, if requested by the chief hearing officer, may prescribe penalties.

[19.2.3.1 through 19.2.3.3 unchanged.]

**19.2.3.4** **Decisions.** **If an allegation is resolved through a petition for immediate penalties, the hearing panel shall prepare and approve a written decision detailing its findings, conclusions and any penalties, and shall make the decision publicly available pursuant to Bylaw 19.11.2 upon resolution of the petition.**

**B.  Bylaws:** Amend 19.3, as follows:

19.3 Public Disclosure and Dashboard.

[19.3.1 through 19.3.2 unchanged.]

**19.3.3** **Public Infractions History.** **If a hearing panel concludes an individual committed a Level I or Level II violation of NCAA legislation, the NCAA national office shall maintain a record of the individual's violations and penalties (if any) and make the record publicly available.**

**C.  Bylaws:** Amend 19, as follows:

19 Infractions Program

[19.01 through 19.8 unchanged.]

19.9 Limited Resolution.

[19.9.1 through 19.9.2 unchanged.]

19.9.3 Summary Disposition. In instances in which the institution, an involved individual and/or the enforcement staff reach agreement on the facts and violations but cannot reach agreement on the aggravating and mitigating factors and/or penalties, the parties may submit the case for resolution via summary disposition.

[19.9.3.1 through 19.9.3.2 unchanged.]

19.9.3.3 Committee on Infractions Review. A hearing panel of the Committee on Infractions shall deliberate in private.

[19.9.3.3.1 unchanged.]

19.9.3.3.2 Acceptance of Proposed Findings of Fact, Violations and Penalties. If the panel accepts the proposed findings of fact and penalties, it shall prepare a report of its decision or adopt the written report of the parties. The panel may make additional comments explaining its analysis or amend the proposed findings of fact, provided any addition or amendment is editorial and does not alter the substance of the proposed

findings of fact. ~~The written report may identify the chancellor or president of the institution (in cases involving lack of institutional control); the director of athletics and/or any individual with direct responsibility and oversight of the athletics department (in cases involving lack of institutional control and failure to monitor); the head coach(es) of the sport(s) involved; and, if appropriate, the chair or other members of the institution's governing body.~~ The panel shall forward the report to the enforcement staff and the parties and publicly announce the resolution of the case pursuant to Bylaw 19.11.

[19.9.3.3.3 through 19.9.3.3.4 unchanged.]

[19.10 unchanged.]

19.11 Committee on Infractions Decisions.

19.11.1 Full Infractions Decision. After resolution of all allegations pursuant to Bylaws 19.8, 19.9 and/or 19.10, the Committee on Infractions hearing panel shall prepare and approve the final, full infractions decision. **The decision shall identify by name all involved individuals and representatives of the institution's athletics interests who committed Level I or Level II violations. It shall also identify by name all individuals with institutional and/or athletics oversight (e.g., president, chancellor, directors of athletics).** The full infractions decision shall be provided to the chancellor or president of the involved institution (or a designee), any involved individuals and the vice president of enforcement.

[19.11.1.1 unchanged.]

19.11.2 Public Release of Full Infractions Decision. Once the full infractions decision has been provided to the parties, the hearing panel shall release it publicly. ~~The public version shall not include names of individuals, but the panel may, at its discretion, identify the chancellor or president of the institution (in cases involving lack of institutional control); the director of athletics and/or any individual with direct responsibility and oversight of the athletics department (in cases involving lack of control or failure to monitor); the head coach(es) of the sport(s) involved; and, if appropriate, the chair or other members of the institution's governing body.~~ **The public decision shall identify by name all involved individuals and representatives of the institution's athletics interests who committed Level I or Level II violations. It shall also identify all individuals with institutional and/or athletics oversight (e.g., president, chancellor, directors of athletics).**

[19.11.2.1 unchanged.]

[19.11.3 through 19.11.5 unchanged.]

[19.12 unchanged.]

19.13 Appeal of Committee on Infractions Decisions.

[19.13.1 through 19.13.5 unchanged.]

19.13.6 Decision of the Infractions Appeals Committee. After considering the appeal and deliberating privately, the Infractions Appeals Committee shall prepare a written decision and provide a copy to any appealing party (including the president or chancellor of an institution currently employing an involved individual), the chair of the Committee on Infractions, the committee appeals advocate and the vice president of enforcement, unless otherwise ordered by the committee. If the committee affirms the hearing panel's decision, it may issue a summary decision stating its conclusions without further discussion. Once the decision has been provided to the parties, the committee shall release a public appeal decision. ~~The public appeal decision will not include names of individuals, but the committee may, at its discretion, identify the chancellor or president of the institution (in cases involving lack of institutional control); the director of athletics and/or any individual with direct responsibility and oversight of the athletics department (in cases involving lack of control or failure to monitor); the head coach(es) of the sport(s) involved; and, if appropriate, the chair or other members of the institution's governing body.~~ **The public appeal decision shall identify by name all involved individuals and representatives of the institution's athletics interests who committed Level I or Level II violations. It shall also identify all individuals with institutional and/or athletics oversight (e.g., president, chancellor, directors of athletics).**

[19.13.7 unchanged.]

[19.14 unchanged.]

D. **Bylaws:** Amend 19.12.6, as follows:

19.12.6 Core Penalties for Level I and Level II Violations. If a hearing panel concludes pursuant to Bylaw 19.8 or 19.9 or the parties participating in a negotiated resolution pursuant to Bylaw 19.10 agree that an institution or involved individual committed Level I and/or Level II violation(s), and after determining the appropriate classification based on

aggravating and mitigating factors, the hearing panel shall prescribe and/or the parties participating in a negotiated resolution should agree to core penalties from the ranges set forth in Figure 19-1 and described below.

[19.12.6.1 through 19.12.6.3 unchanged.]

19.12.6.4 Show-Cause Orders. If a determination is made that an institution has not taken appropriate disciplinary or corrective action regarding an individual found in violation of NCAA bylaws, the panel may issue and/or approve an order that the institution take additional disciplinary or corrective action, including but not limited to, restriction of some or all athletically related duties, as set forth in Figure 19-1, unless the institution appears before the panel to show cause why the additional penalties should not be applied. Decisions regarding disciplinary or corrective actions involving personnel shall be made by the institution, but the determination of whether the action satisfies the institution's obligation of NCAA membership shall rest solely with the Committee on Infractions. **Show-cause orders begin with the release of the infractions decision pursuant to Bylaw 19.11.2 or, if multiple resolution methods are involved, the release of the public statement pursuant to Bylaw 19.11.2.1. The show-cause order is prospective in nature.**

**19.12.6.4.1 Institutional or Sport Program Penalties within a Show-Cause Order. In addition to restrictions on athletically related duties, the panel may also attach institutional and/or sport program specific penalties (e.g., scholarship reductions, recruiting restrictions, countable athletically related activities limitations, postseason bans) as conditions of an involved individual's show-cause order. Institutional and/or sport program specific penalties may be appropriate if, for example, the involved individual's conduct was intentional, egregious or the conduct provided or was intended to provide an institution or sport program with a competitive advantage. Institutional or sport program penalties within a show-cause order shall apply to any employing institution during the designated period of the penalties. An employing institution may appear before the panel to show cause why the penalties should not be applied.**

19.12.6.5 ~~Head Coach Restrictions~~ **Suspensions.** If a determination is made that an employing institution has not taken appropriate disciplinary or corrective action regarding ~~a head coach~~ **an involved individual** found in violation of ~~Bylaw 11.1.1.1~~ **NCAA legislation**, the panel may issue and/or approve an order that the institution suspend the ~~coach~~ **involved individual** for a number of ~~contests~~ **weeks during the season** from the range set forth in Figure 19-1 ~~that would apply to the underlying violation(s)~~ unless the institution appears before the panel to show cause why the suspension should not be applied. **Unless otherwise specified by the panel, the suspension shall apply to all athletically related duties during the designated time period.** Decisions regarding disciplinary or corrective actions involving personnel shall be made by the institution, but the determination of whether the action satisfies the institution's obligation of NCAA membership shall rest solely with the Committee on Infractions. **The suspension shall begin following the release of the infractions decision with the next scheduled contest of the championship segment, unless a different starting date is specified by the panel (e.g., conference schedule, postseason, etc.).**

[19.12.6.6 through 19.12.6.7 unchanged.]

  **E.  Bylaws:** Amend 19.12.8, as follows:

19.12.8 Additional Penalties for Level I and Level II Violations. Additional penalties for Level I and/or Level II violations may include one or more of the following:

[19.12.8-(a) through 19.12.8-(h) unchanged.]

(i) Pursuant to a show-cause order, disassociation of relations with a representative of an institution's athletics interests, including:

  (1) Not accepting any assistance from the individual**, independent agency or organization** that would aid in the recruitment of prospective student-athletes or the support of enrolled student-athletes;

  (2) Not accepting financial assistance for the institution's athletics program from the individual**, independent agency or organization**;

  **(3) Not accepting financial assistance from the individual, independent agency or organization;**

  **(4) Prohibiting the individual's, independent agency's or organization's presence at or access to institutional athletics facilities or events;**

  **(5) Prohibiting the institution from offering the individual, independent agency or organization the option to purchase tickets to athletics events;**

(*3* **6**) Ensuring that no athletics benefit or privilege is provided to the individual**, independent agency or organization** that is not generally available to the public at large; and

(*4* **7**) Taking such other actions against the individual**, independent agency or organization** that the institution determines to be within its authority to eliminate the involvement of the individual**, independent agency or organization** in the institution's athletics program.

[19.12.8-(j) through 19.12.8-(l) unchanged.]

**F.** **Bylaws:** Amend Figure 19-1, as follows:

Figure 19.1 Penalty Guidelines

**FIGURE 19-1**
Penalty Guidelines (Excerpted Version)

| Violation Level I | Violation Level II | Show-Cause Order | Restrictions |
|---|---|---|---|
| Aggravation | | 3 years to lifetime | All athletically related duties |
| Standard | Aggravation | 2 to 5 years | All or partial ~~coaching and recruiting~~ **athletically related duties** (including ~~game~~ suspensions) |
| Mitigation | Standard | ~~0~~**1** to 2 years | All or partial ~~coaching and recruiting~~ **athletically related duties** (including ~~game~~ suspensions) |
| | Mitigation | 0 to 1 years | All or partial ~~coaching and recruiting~~ **athletically related duties** (including ~~game~~ suspensions) |

| Violation Level I | Violation Level II | *Head Coach Restrictions (game suspensions via show cause for Bylaw 11.1.1.1)* **Suspensions Via Show Cause** |
|---|---|---|
| Aggravation | | 50 to 100% of season plus % of additional seasons |
| Standard | Aggravation | 30 to 50% of season |
| Mitigation | Standard | ~~0~~**10** to 30% of season |
| | Mitigation | 0 to 10% of season |

**Source:** NCAA Division I Council (Board of Directors Infractions Process Committee)

**Effective Date:** Immediate

**Category:** Amendment

**Topical Area:** Infractions Program

**Rationale:** The NCAA Division I Board of Directors endorsed the Infractions Process Committee's principle-based approach to developing recommendations that better align the Division I infractions program's penalty structure with today's collegiate athletics environment. One principle identified the need of the infractions process to better focus meaningful penalties on the individuals responsible for the underlying wrongdoing. Based on this direction, the Infractions Process Committee developed a package of changes designed to ensure that the Division I Committee on Infractions has the necessary tools and authority to effectively hold individual actors accountable. This proposal would both expand upon existing penalty authority, such as issuing suspensions on involved individuals from participating in athletically related activities, issuing show cause orders and disassociating boosters, while also establishing new approaches to individual accountability, such as publicizing the names of culpable individuals in public infractions decisions.

**Division I Commitment addressed by proposal:** The Commitment to Institutional Control and Compliance.

**Is the proposal consequential or nationally significant?:** Yes. Individual accountability measures are nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** No additional monitoring burden.

**How does the proposal support student-athlete success/well-being?:** Student-athlete success and well-being is supported when individuals are held accountable for violations of NCAA legislation.

**Estimated Budget Impact:** None.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
   None

**History:**

      Oct 17, 2023:     In Progress

---

## Governance Structure and Committees

No. 2023-56 GOVERNANCE STRUCTURE AND COMMITTEES -- PROGRESS-TOWARD-DEGREE WAIVERS COMMITTEE -- COMPOSITION -- REDUCTION FROM 14 TO NINE

**Intent:** To reduce, from 14 to nine, the number of members of the NCAA Division I Progress-Toward-Degree Waivers Committee.

**Bylaws:** Amend 21, as follows:

21 Governance Structure and Committees

[21.02 through 21.9 unchanged.]

21.10 Division I Committees.

[21.10.1 through 21.10.4 unchanged.]

21.10.5 Committees Reporting to the Committee on Academics.

    [21.10.5.1 unchanged.]

    21.10.5.2 Progress-Toward-Degree Waivers Committee.

        21.10.5.2.1 Composition. The Progress-Toward-Degree Waivers Committee shall consist of ~~14~~ **nine** members.

        [21.10.5.2.2 through 21.10.5.2.3 unchanged.]

[21.10.5.3 unchanged.]

[21.10.6 through 21.10.8 unchanged.]

**Source:** NCAA Division I Council (Committee on Academics)

**Effective Date:** Immediate; reduction to be achieved through normal attrition.

**Category:** Amendment

**Topical Area:** Governance Structure and Committees

**Rationale:** The Progress-Toward-Waivers Committee has 14 members and was made up of two subcommittees, dividing the reviews between progress-toward-degree waivers and two-year college transfer waivers. The NCAA Division I Committee on Academics Subcommittee on Student-Athlete Academics recently restructured the Progress-Toward-Degree Waivers Committee to eliminate the two separate subcommittees that report to it. The Progress-Toward-Degree Waivers Subcommittee reviewed appeals for progress-toward-degree waivers and the Two-Year College Transfer Waivers Subcommittee reviewed appeals for two-year college transfer waivers. The volume of two-year college transfer waivers and subsequent appeals has decreased over the last several years, creating a discrepancy between the work of the two subcommittees. The restructured committee will review both progress-toward-degree and two-year college waivers. This change will provide the opportunity for all to be active members of the new restructured committee. The Committee on Academics Subcommittee on Student-Athlete Academics will continue to review the appellate process to ensure that the most efficient, consistent, and fair process is provided. Now that there are no longer two subcommittees, the size of the overall committee can be appropriately reduced while continuing to provide consistency and efficiency for all appeal requests.

**Division I Commitment addressed by proposal:** The Commitment to Sound Academic Standards.

**Is the proposal consequential or nationally significant?:** Yes.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal would not impact monitoring burdens.

**How does the proposal support student-athlete success/well-being?:** Student-athlete well-being is supported by waiver committees that are constituted in a way to ensure efficiency and consistency.

**Estimated Budget Impact:** Reduction in expenses associated with fewer committee members.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
None

**History:**

Oct 16, 2023:     In Progress

No. 2023-57 GOVERNANCE STRUCTURE AND COMMITTEES -- INITIAL-ELIGIBILITY WAIVERS COMMITTEE -- COMPOSITION -- REDUCTION FROM 20 TO SEVEN

**Intent:** To reduce, from 20 to seven, the number of members of the NCAA Division I Initial-Eligibility Waivers Committee.

**Bylaws:** Amend 21, as follows:

21 Governance Structure and Committees

[21.02 through 21.9 unchanged.]

21.10 Division I Committees.

[21.10.1 through 21.10.4 unchanged.]

21.10.5 Committees Reporting to the Committee on Academics.

21.10.5.1 Initial-Eligibility Waivers Committee.

21.10.5.1.1 Composition. The Initial-Eligibility Waivers Committee shall consist of ~~20~~ **seven** members.

[21.10.5.1.2 through 21.10.5.1.4 unchanged.]

[21.10.5.2 through 21.10.5.3 unchanged.]

[21.10.6 through 21.10.8 unchanged.]

**Source:** NCAA Division I Council (Committee on Academics)

**Effective Date:** Immediate; reduction to be achieved through normal attrition.

**Category:** Amendment

**Topical Area:** Governance Structure and Committees

**Rationale:** The NCAA Division I Committee on Academics Subcommittee on Student-Athlete Academics recently restructured the Initial-Eligibility Waivers Committee to remove the four separate subcommittees that report to it, which focused on specific subtypes of initial-eligibility waivers. These subtypes included core course, grade-point average, international and education-impacting disabilities. The restructured Initial-Eligibility Waivers Committee no longer consists of subcommittees. It will review all appeals of all initial-eligibility waiver subtypes as a committee. This change will enhance engagement, efficiency and consistency while maintaining the requisite subject-matter expertise and committee composition. The Committee on Academics Subcommittee on Student-Athlete Academics will continue to review the appellate process to ensure that the most efficient, consistent and fair process is provided. With four separate subcommittees, it was important to have enough committee members for each subcommittee. With the elimination of subcommittees, the size of the overall Initial-Eligibility Waivers Committee may be appropriately reduced while continuing to provide consistency and efficiency for all appeal requests.

**Division I Commitment addressed by proposal:** The Commitment to Sound Academic Standards.

**Is the proposal consequential or nationally significant?:** Yes.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal would not impact monitoring burdens.

**How does the proposal support student-athlete success/well-being?:** Student-athlete well-being is supported by waiver committees that are constituted in a way to ensure efficiency and consistency.

**Estimated Budget Impact:** Reduction in expenses associated with fewer committee members.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** None.

**Position Statement(s):**
None

**History:**

Oct 16, 2023:        In Progress

## Name, Image and Likeness Activities

No. 2023-58      NAME, IMAGE AND LIKENESS ACTIVITIES -- STUDENT-ATHLETE PROTECTIONS

**Intent:** To establish student-athlete protections associated with name, image and likeness activities, as specified.

**A. Bylaws:** Amend 22, as follows:

**22 Name, Image and Likeness Activities**

**22.01 General Principles.**

**22.01.1 Name, Image and Likeness Compensation. An individual may receive compensation for the use of the individual's name, image and likeness, which may be secured or compensated based, in whole or part, on athletics skill or reputation. Name, image and likeness activities may not be used to compensate student-athletes for athletics participation or achievement.**

**22.01.2 Offers and Inducements. Name image and likeness activities may not be used as an inducement to enroll or remain enrolled at a specific institution.**

**22.02 Definitions and Applications.**

Date Printed: 12/05/2023

**22.02.1 Name, Image and Likeness Activity.** Name, image and likeness activity is an activity that involves the commercial use of an individual's name, image, or likeness to advertise or endorse the sale or use of a product or service. Name, image and likeness compensation must:

(a) Include quid pro quo (e.g., compensation for work performed);

(b) Not be contingent upon initial or continued enrollment at a particular institution (see Bylaw 22.01.2); and

(c) Not be in return for athletic participation or achievement.

B. **Bylaws:** Amend 22.1, as follows:

**22.1 Third-Party Service Providers.**

**22.1.1 Representation for Purposes of Name, Image and Likeness Activities.** An individual may use third-party services, including agent representation, for the purpose of name, image and likeness activities. Business arrangements related to representation for purposes of name, image and likeness activities (e.g., travel expenses associated with meeting) shall be consistent with arrangements between the third-party service provider and other prospective or current clients and align with industry standards.

**22.1.2 Professional Service Provider Registry.** The NCAA national office shall make available a centralized registry of professional service providers who provide or are seeking to provide services to student-athletes in a manner approved by the Board of Directors, or an entity designated by the Board.

C. **Bylaws:** Amend 22.2, as follows:

**22.2 Disclosure of Name, Image and Likeness Activities.**

**22.2.1 Name, Image and Likeness Disclosure.** Student-athletes must disclose name, image and likeness agreements to the institution no later than 30 days after entering or signing an agreement. Failure to disclose a name, image and likeness activity shall result in the student-athlete's ineligibility for participation (athletically related activities) in all intercollegiate athletics until the disclosure requirement is satisfied. (For disclosure requirements for prospective student-athletes, see Bylaw 22.3.1.)

**22.2.1.1 Required Elements Of Name, Image and Likeness Disclosure.** Disclosure of an individual's name, image and likeness activities shall include the following:

(a) Names and contact information of individuals involved in the activity, including a description of the nature of any relationship between those individuals;

(b) Terms of the arrangement, including a description of services rendered, rights granted, term length, compensation and payment structure (e.g., cash, barter, deferred);

(c) Names and contact information of any professional service provider involved in the arranging, negotiating, or securing the disclosed activity, including a description of the nature of any relationship between the service provider and any individual involved in the activity; and

(d) Terms of compensation between the professional service provider and the student-athlete (e.g., agent contingency fee).

**22.2.1.2 Name, Image and Likeness Attestation.** An individual's disclosure of name, image and likeness activities must include attestation that:

(a) All disclosed information is complete and accurate;

(b) The disclosed activity is consistent with institutional and conference policy, NCAA rules, and any applicable state or federal law;

(c) Pay or promise of pay related to the disclosed activity is not a substitute for payment for athletics participation or achievement or an inducement to enroll or remain enrolled at a specific institution; and

(d) Acknowledgement that failure to disclose or fraudulent disclosure may constitute impermissible unethical conduct (see Bylaw 10.1).

**22.2.1.3 Limited Disclosure.** Unless otherwise noted, an individual shall not be required by the NCAA to disclose name, image and likeness activities valued less than $600. An individual must disclose name, image and likeness activities involving the same (or substantially the same) parties if the aggregate value of the activities is at or above this threshold.

**22.2.1.4 Effect of Violation. A violation of Bylaw 22.2.1 or its subsections shall be considered an institutional violation per Bylaw 8.01.3; however, a violation shall not affect the student-athlete's eligibility, provided the disclosure requirement is satisfied.**

**22.2.2.1 Reporting of Disclosed information. Aggregated information related to name, image, and likeness activities disclosed to a member institution shall be reported to the NCAA national office on a biannual basis. An institution shall make disclosed information available for examination on request by an NCAA staff member or an authorized representative of the NCAA.**

**22.2.2.1.1 Publication of Aggregate Name, Image and Likeness Data. The NCAA national office shall make available an aggregated database of disclosed name, image and likeness information.**

D.  **Bylaws:** Amend 22.3, as follows:

**22.3 Recruiting.**

**22.3.1 Requirements for Written Offer of Athletically Related Financial Aid. A prospective student-athlete shall disclose involvement in name, image and likeness activities in a manner consistent with Bylaw 22.2 before an institution may provide a written offer of athletically related financial aid per Bylaw 15.3.2.2.**

E.  **Bylaws:** Amend 22.4, as follows:

**22.4 Education.**

**22.4.1 Name, Image and Likeness Education. The NCAA national office shall make available comprehensive education regarding name, image and likeness activities in a manner approved by the Board of Directors, or an entity designated by the Board. Such education shall include the provision of standardized contract terms for use in name, image and likeness agreements.**

**Source:** NCAA Division I Council

**Effective Date:** August 1, 2024

**Category:** Amendment

**Topical Area:** Name, Image and Likeness Activities

**Rationale:** This proposal is designed to assist student-athletes in making informed decisions as they navigate the environment surrounding name, image and likeness without exerting control over a student-athlete's decision or curtailing their name, image and likeness opportunities. While congressional action and/or state laws could help regulate the name, image and likeness environment, this proposal should be considered the first step in creating protections for student-athletes in the name, image and likeness environment, which must be regularly monitored to ensure the needs of student-athletes are met. Requiring student-athletes to disclose name, image and likeness activities (valued at or above a set minimum threshold, which mirrors the Internal Revenue Service reporting threshold) to their institutions will support institutions in meeting the educational needs of their student-athletes on name, image and likeness. The disclosure requirement will also promote clarity to student-athletes through increased transparency and promote behavior consistent with institutional values and NCAA legislation through Institutional monitoring and evaluation of name, image and likeness activities. In turn, requiring institutions to report disclosed name, image and likeness information will allow the Association to identify challenges and opportunities through the evaluation of aggregated and anonymized normative data to modify policy and processes as circumstances change. Further, establishing a national, centralized registration process for third-party service providers involved in student-athlete name, image and likeness activities will assist student-athletes with making informed decisions on third-party services, such as agent representation and financial advising. Last, requiring the NCAA national office to provide comprehensive educational on name, image and likeness will complement institutional educational efforts, which is required by existing Division I legislation. Including recommended standard contract terms as part of this educational plan will help student-athletes and their families understand name, image and likeness transactions and assist them in making informed decisions about the contracts they sign. Additional educational resources, to supplement institutional efforts, will provide student-athletes, their families, and individuals working with student-athletes with accurate information, clear guidelines on NCAA rules and policies, and resources to understand important related topics, such as how to read a contract and personal branding.

**Division I Commitment addressed by proposal:** The Commitment to Student-Athlete Well-Being.

**Is the proposal consequential or nationally significant?:** Yes. Establishing student-athlete protections related to name, image and likeness is nationally significant.

**Is the proposal enforceable and how do the merits outweigh monitoring burdens?:** Yes. This proposal establishes student-athlete protections in a manner that outweighs national and local monitoring burdens.

**How does the proposal support student-athlete success/well-being?:** Establishing student-athlete protections supports student-athlete success and well-being related to engaging in NIL activities.

**Estimated Budget Impact:** Costs associated with national and local-level educational efforts, establishing local and national disclosure mechanisms, and establishing a national platform for the voluntary registration of third-party service providers.

**Impact on Student-Athlete's Time (Academic and/or Athletics):** Dependent on student-athlete decision-making related to participating in name, image and likeness activities.

**Position Statement(s):**
  None

**History:**

       Oct 18, 2023:     In Progress