# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| STATE OF TENNESSEE;<br>COMMONWEALTH OF VIRGINIA,<br><br>    Plaintiffs,<br><br><br>NATIONAL COLLEGIATE ATHLETIC<br>ASSOCIATION,<br><br>    Defendant. | Case No. 3:24-cv-00033-DCLC-DCP |

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION

*Nothing has changed in a week*.  The Court should not reverse course from its finding that Plaintiffs cannot show irreparable harm.  That essential element remains an insurmountable hurdle.  Like a TRO, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. NRDC*, 555 U.S. 7, 22 (2008).  "[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Id.*  And, as the Court correctly concluded, alleged harms cannot be "irreparable" if "fully compensable by monetary damages."  Op. 10.

Plaintiffs' supplementation does not change that their original claim of irreparable harm—lost NIL inducements—is compensable through money damages.  Plaintiffs' claim that it is impossible to build an economic model of such inducements is both incorrect and off point.  *Plaintiffs' own expert* has sponsored similar models, and whether or not such harm can be modeled on a class-wide basis says nothing about whether an individual student-athlete could establish a money damages claim if she were actually harmed.  While Plaintiffs now add new and different claims of harm (some of which they repudiated in prior filings), they offer no concrete proof in support.  They just theorize what might happen.  But possibilities are not probabilities.  Plaintiffs must demonstrate the latter to obtain injunctive relief.  They do not and cannot.

I. **Plaintiffs Continue to Bear the Significant Burden of Proving a Specific and Probable Irreparable Harm.**

This Court denied Plaintiffs' request for a TRO because they did not prove irreparable harm.  Recognizing the uphill battle they face on the facts, Plaintiffs suggest that their burden of proof is now different at the preliminary injunction stage.  Plaintiffs are wrong: The requisite showing is indistinguishable.  *Perez-Perez v. Adducci*, 459 F. Supp. 3d 918, 924 (E.D. Mich. 2020) (describing the difference between a TRO and preliminary injunction as a "linguistic difference [that] is largely academic as *the same factors apply to both*.") (emphasis added); *see also G.S. ex*

1

*rel. Schwaigert v. Lee*, 558 F. Supp. 3d 601, 607 (W.D. Tenn. 2021) ("A motion for a temporary restraining order is considered under the same standard as a preliminary injunction."). Indeed, when a plaintiff fails to demonstrate irreparable harm, district courts within the Sixth Circuit often deny the twin requests for a TRO and preliminary injunctive relief simultaneously.[1]

"Irreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quoting *D.T. v. Summer Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019)). Plaintiffs must establish a harm that is "certain and immediate," not "speculative or theoretical." *Id.* "A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Blount Pride, Inc. v. Desmond*, No. 3:23-CV-00316-JRG-JEM, 2023 U.S. Dist. LEXIS 155339, at *20 (E.D. Tenn. Sept. 1, 2023) (citation omitted)). Plaintiffs' suggestion that they face a lower burden now is thus incorrect.

**II.     Plaintiffs' New Evidence Fails To Establish Irreparable Harm.**

Plaintiffs' new filings do not undercut this Court's holding that "any lost opportunities are likely compensable by monetary damages." Op. 10. Plaintiffs begin by arguing that it is impossible to calculate damages for lost NIL opportunities, Supp. Br. 3, but their own expert's conduct in the *in re NCAA College Athlete NIL Litigation* (the "Class Action") belies his convenient assertion here.

The relevant question is not whether the harms at issue here are part of the damages models in the Class Action—the issue Plaintiffs' expert spends most of his declaration addressing. *See*

---

[1] *See, e.g.*, *Moulds v. Bank of N.Y. Mellon*, 1:11-CV-200, 2011 U.S. Dist. LEXIS 104144 (E.D. Tenn. Sept. 14, 2011); *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, No. 23-12436, 2023 U.S. Dist. LEXIS 198276 (E.D. Mich. Sept. 27, 2023); *Bleavins v. O'Neal*, No. 2:22-cv-02178-TLP-cgc, 2022 U.S. Dist. LEXIS 53133 (W.D. Tenn. Mar. 24, 2022).

2

Schwarz Supp. Decl. ¶¶ 14–22 (ECF No. 32-1). The relevant question is whether the harms here *could* be redressed by monetary damages. And on this front, Plaintiffs' expert's analysis is disingenuous, because most of his assertions about the difficulty of modeling lost NIL inducements apply equally well to work he has done in the Class Action. Plaintiffs there seek damages for "Broadcast NIL" (BNIL)—potential payments made to student-athletes for participation in broadcasts. Schwarz Supp. Decl. ¶ 1 (ECF No. 2-5). Like NIL inducements, BNIL is a market that does not presently exist. *See* Ex. 1, Defendants' Opp. to Class Cert., *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW, ECF No. 249 at 8 (expert admission that BNIL is a made-for-litigation fiction). Like NIL inducements, there is "no 'after period' (nor a 'before period')" for BNIL. Schwartz Supp. Decl. ¶¶ 14-16. Like NIL inducements, building a BNIL model involves creation of a "counterfactual world." Supp. Br. 3. Yet Plaintiffs' expert built a supporting model.

The point is not that the BNIL model (or any of the models) in the Class Action is defensible; the NCAA maintains that they are not. But the Court should not credit the opinion of an expert who here claims he cannot model a counterfactual to help one set of plaintiffs, and across the country models a similar counterfactual to help a different set of plaintiffs. The coin cannot always come up heads. In any event, Plaintiffs' expert testimony relates only to the creation of an economic model, not whether an individual student-athlete could prove an entitlement to money damages. If there are, in fact, students who believe they have missed out on more lucrative options because of the inducement ban, they could try to bring a money damages lawsuit comparing missed opportunities to their real ones. The fact that Plaintiffs have not identified a single such student—despite having thousands of student athletes within their borders, at a time when student-athletes feel quite comfortable bringing lawsuits against the NCAA—speaks volumes to whether these injuries are "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis added).

Plaintiffs' new theory of injury from attending an unspecified school that is a bad fit for an unspecified student athlete does not solve their problem. As before, the key question is whether Plaintiffs can prove that this alleged injury causes "actual and imminent harm." Op. 12. Instead, Plaintiffs offer speculation. Their expert hypothesizes how a fictional athlete might choose a school that ends up being a worse fit based on NIL compensation. Schwarz Supp. Decl. ¶¶ 9–13. Mr. Heupel echoes this hypothetical concern. Heupel Decl. ¶¶ 17–19 (ECF No. 32-2).[2] But these declarations are more notable for what they do not say. Plaintiffs offer *no evidence* that any student-athlete is *actually being harmed* in this way, nor any evidence of NCAA enforcement activity against student-athletes that would chill their saying so. On the contrary, their expert admits that students' decisions about where to attend school are multifaceted and often idiosyncratic, Schwarz Supp. Decl. ¶¶ 10, 13—precluding Plaintiffs from showing certain and immediate harm from the rules they challenge.[3]

### III. Plaintiffs Present No Proof Of New Harms Warranting This Court's Intervention.

Plaintiffs' new claims of injury to themselves change nothing. "[A]n injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *D.T. Summer Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (citations omitted). Plaintiffs must present "specific facts and a sworn basis for finding [it]." *Scheurer Hosp. v. ADM Imaging Techs.*, No. 08-13035-BC, 2008 U.S. Dist. LEXIS 57841, at *7–8 (E.D. Mich. July 30, 2008). "Speculation or unsubstantiated fears about what may happen in the future cannot provide the basis for a preliminary injunction." *Metro Life*

---

[2] It is difficult to understand the relevance of Mr. Heupel's claims that NCAA discipline has a chilling effect on recruiting. Heupel Decl. ¶¶ 23–25. The rules Plaintiffs challenge are rules that the Division I membership, including the member institutions in Tennessee and Virginia, have chosen to apply to all schools.

[3] Plaintiffs' supplemental brief also ignores that this Court's irreparable harm analysis is not exhaustive and leaves unanswered many other independent reasons that Plaintiffs have failed to meet their burden. *See* NCAA Resp. Br. ¶¶ I(1), (2), (3), (6).

4

*Ins. Co. v. Vanlue*, No. 5:11-CV-00084-R, 2011 U.S. Dist. LEXIS 56699, at *7 (W.D. Ky. May 23, 2011) (quotations omitted).[4]

Plaintiffs' new claims flunk this test. Despite articulating a parade of horribles involving the success of athletic programs and the economies of the States, Plaintiffs offer literally no affidavits or documents supporting the purported harms. Indeed, Mr. Heupel's declaration lauds the success of the Tennessee football team, Heupel Decl. ¶ 7, which is inconsistent with Plaintiffs' suggestions that his football team and the economy are soon to crater.

The States' claims of injury are also belied by the conduct of the schools they seek to represent. UT Knoxville is a member of the Southeastern Conference. Both UVA and Virginia Tech are members of the Atlantic Coast Conference. Those conferences are, in the Class Action lawsuit, defending the precise rules Plaintiffs now challenge. Moreover, over a hundred representatives of universities in Tennessee and Virginia have participated in the NCAA's rulemaking process, including the passage of the rules challenged here that are designed to minimize the possibility that long-lasting decisions about where to attend school will be distorted by short-term cash payments and unscrupulous actors. Silver Supp. Decl. ¶¶ 4–5. Plaintiffs are not injured, much less irreparably so, by rules that institutions in their borders approved, that some of the institutions' Conferences are defending, and that the institutions can vote to change through participation in the NCAA process. Indeed, the fact that Plaintiffs have invoked these implausible injuries to try to show irreparable harm—just a week after retreating from any claim of sovereign injury, *see* Reply 11 (ECF No. 28)—is proof positive that these claims should be litigated in the ordinary course on a full record.

---

[4] *See also Marathon Equip. Co. v. Quinn*, No. 1:22-CV-205-TAV-SKL, 2022 U.S. Dist. LEXIS 196615, at *8–9 (E.D. Tenn. Oct. 28, 2022); *Bertec Corp. v. Sparta Software Corp.*, No. 2:19-CV-04623, 2019 U.S. Dist. LEXIS 222481, at *20 (S.D. Ohio Dec. 27, 2019).

*s/ Robert E. Boston*
Robert E. Boston (Tenn. BPR # 009744)
Taylor J. Askew (Tenn. BPR # 033193) (*Pro Hac Vice*)
David J. Zeitlin (Tenn. BPR # 037664) (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
bob.boston@hklaw.com
taylor.askew@hklaw.com
david.zeitlin@hklaw.com

Rakesh Kilaru (Appearing *Pro Hac Vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
rkilaru@wilkinsonstekloff.com

*Attorneys for Defendant*