# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| STATE OF TENNESSEE, ET AL. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-33-DCLC-DCP |
| ) | |
| NATIONAL COLLEGIATE ATHLETIC ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

## JOINT MOTION FOR ENTRY OF
## CONSENT JUDGMENT AND PERMANENT INJUNCTION

Plaintiffs—the States of Tennessee, Florida, and New York, the Commonwealth of Virginia, and the District of Columbia—and Defendant, National Collegiate Athletic Association, have agreed to resolve this matter in accordance with the terms of the proposed Consent Judgment and Permanent Injunction attached to this filing (Exhibit A). The parties respectfully ask this Court to enter the attached Consent Judgment and Permanent Injunction.

Dated: March 17, 2025

By: [signature]

JONATHAN SKRMETTI
ATTORNEY GENERAL OF TENNESSEE

LACEY E. MASE
Chief Deputy Attorney General

J. DAVID MCDOWELL
Deputy, Consumer Protection Division
ETHAN BOWERS*
Senior Assistant Attorney General
TYLER T. CORCORAN*
MARILYN GUIRGUIS*
Assistant Attorneys General
Office of the Attorney General and Reporter
P.O. Box 20207

Respectfully submitted,

By: [signature]

Rakesh N. Kilaru*
**WILKINSON STEKLOFF LLP**
2001 M Street, NW, 10th Floor
Washington, DC 20036
(202) 847-4000
rkilaru@wilkinsonstekloff.com

Robert E. Boston (Tenn. BPR # 009744)
Taylor J. Askew* (Tenn. BPR # 033193)
David J. Zeitlin* (Tenn. BPR # 037664)
**HOLLAND & KNIGHT LLP**
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
bob.boston@hklaw.com

Nashville, TN 37202
(615) 741-8722
Ethan.Bowers@ag.tn.gov
Tyler.Corcoran@ag.tn.gov
Marilyn.Guirguis@ag.tn.gov

taylor.askew@hklaw.com
david.zeitlin@hklaw.com

*Counsel for Defendant*

*\*Admitted pro hac vice*

Cameron T. Norris
Thomas R. McCarthy\*
David L. Rosenthal\*
**CONSOVOY MCCARTHY PLLC**
1600 Wilson Blvd., Suite 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com
tom@consovoymccarthy.com
david@consovoymccarthy.com

Adam K. Mortara
**LAWFAIR LLC**
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Patrick Strawbridge\*
**CONSOVOY MCCARTHY PLLC**
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548
patrick@consovoymccarthy.com

*Counsel for Plaintiff Tennessee*

JASON S. MIYARES
ATTORNEY GENERAL OF VIRGINIA

STEVEN G. POPPS
Chief Deputy Attorney General

*/s/ Tyler T. Henry*
TYLER T. HENRY\*
Assistant Attorney General & Manager,
Antitrust Unit

*/s/ Jonathan M. Harrison II*
JONATHAN M. HARRISON II\*
Assistant Attorney General

2

Consumer Protection Section

Office of the Attorney General
202 North Ninth St.
Richmond, VA 23219
(804) 786-2071
thenry@oag.state.va.us
jharrison@oag.state.va.us

*Counsel for Plaintiff Virginia*

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

*/s/ Lizabeth A. Brady*
LIZABETH A. BRADY
Director, Antitrust Division
GENEVIEVE HALL*
Special Counsel
COLIN G. FRASER*
Assistant Attorney General

Office of the Attorney General, Antitrust Div.
PL-01 The Capitol
Tallahassee, Florida 32399-1050
850-414-3300
Liz.Brady@myfloridalegal.com
Genevieve.Hall@myfloridalegal.com
Colin.Fraser@myfloridalegal.com

*Attorneys for Plaintiff Florida*

LETITIA JAMES
ATTORNEY GENERAL OF NEW YORK

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General, Economic
Justice Division

*/s/ Elinor R. Hoffmann*
ELINOR R. HOFFMANN*
Chief, Antitrust Bureau
AMY MCFARLANE*
Deputy Chief, Antitrust Bureau
BRYAN BLOOM*
Senior Enforcement Counsel, Antitrust Bureau

3

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Elinor.Hoffmann@ag.ny.gov
Amy.McFarlane@ag.ny.gov
Bryan.Bloom@ag.ny.gov

*Attorneys for Plaintiff New York*

BRIAN L. SCHWALB
ATTORNEY GENERAL FOR THE
DISTRICT OF COLUMBIA

*/s/ Seth Rosenthal*
SETH ROSENTHAL\*
Chief Deputy Attorney General

*/s/ Adam Gitlin*
ADAM GITLIN\*
Chief, Antitrust and Nonprofit Enforcement Section

Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, D.C. 20001
202-727-3400
Seth.Rosenthal@dc.gov
Adam.Gitlin@dc.gov
Cole.Niggeman@dc.gov

*Counsel for Plaintiff District of Columbia*

## CERTIFICATE OF SERVICE

I e-filed this document on March 17, 2025, which emailed everyone requiring service.

*/s/ Cameron T. Norris*

4

# Exhibit A

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **STATE OF TENNESSEE, ET AL.** | )<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) **Case No. 3:24-cv-33-DCLC-DCP**<br>) |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,** | )<br>)<br>) |
| **Defendant.** | )<br>) |

## [PROPOSED] CONSENT JUDGMENT AND PERMANENT INJUNCTION

1. Plaintiffs—the States of Tennessee, Florida, and New York; the Commonwealth of Virginia; and the District of Columbia—brought this action alleging violations of the Sherman Act, 15 U.S.C. §1 *et seq.*, against Defendant, National Collegiate Athletic Association ("NCAA").

2. This Court has subject matter jurisdiction over this action under 15 U.S.C. §4 and §28 U.S.C. §1331, §1337(a).

3. Plaintiffs, through their respective attorneys general, can bring suits for injunctive relief to enforce the Sherman Act. 15 U.S.C. §1, §26.

4. All parties consent to this venue and to the personal jurisdiction of the Court for purposes of this litigation, entry of the Consent Judgment, and any subsequent litigation to enforce its terms.

5. The NCAA has adopted rules and regulations governing certain aspects of college sports.

6. For purposes of this Consent Judgment, "NIL" and "NIL Opportunities" are an activity or activities that involve the use of an individual's name, image and likeness for commercial purposes related to the promotion or endorsement of goods or services provided to the general public.

6

7. For purposes of this Consent Judgment, "Commercial NIL Compensation" is a quid-pro-quo arrangement that contains an agreement to pay an individual for work that makes use of his or her NIL, not for athletic performance or achievement or for work never performed.

8. For purposes of this Consent Judgment, "NIL Recruiting Ban" refers to NCAA Division I bylaws found in the 2024-25 NCAA Division I Manual such as: 12.5.2, 12.5.2.1, 12.5.3, 12.11.1, 12.11.2, 12.11.3, 12.11.4.1, 12.11.4.2, 13.01.2, 13.02.15, 13.1.2.1, 13.1.2.4(a), 13.1.2.5, 13.1.3.3, 13.1.3.3.1, 13.1.3.3.1.1, 13.1.5, 13.1.5.9, 13.2.1, 13.2.1.1, 13.5.3, 13.10, 13.10.1.1, 13.10.1.4, 13.14.1, 13.14.4, 16.02.3, 19.7.3, 22.1.1, 22.01.2, 22.02.1(b), solely to the extent that they restrain (1) prospective student-athletes and current student-athletes in the transfer portal or who otherwise have declared their intent to transfer during the generally applicable recruiting windows from discussing or negotiating potential NIL opportunities, or entering into contracts with third parties for Commercial NIL Compensation even where such Commercial NIL Compensation is contingent on enrollment at a particular school, before they enroll or commit to a member institution, (2) third-parties from discussing or negotiating potential Commercial NIL Compensation with prospective student-athletes or current athletes in the transfer portal or who otherwise have declared their intent to transfer during the generally applicable recruiting windows, and/or (3) member institutions from competing for prospective student-athletes and current student-athletes in the transfer portal or who otherwise have declared their intent to transfer during the generally applicable recruiting windows by providing support and assistance regarding potential NIL Opportunities with third parties.

9. The NCAA will not enforce any other NCAA bylaw not included in the list above to the extent such bylaw restrains the above-described conduct

10. Plaintiffs allege that the NIL Recruiting Ban has unreasonably restrained competition for Division I student-athletes among schools and suppressed NIL Opportunities for prospective Division I college athletes and current student-athletes in the transfer portal.

7

11. Plaintiffs allege that the NIL Recruiting Ban prohibits these athletes and third-parties (including, but not limited to, NIL "collectives") from open and transparent interactions relating to Commercial NIL Compensation and thus denies these athletes the ability to effectively negotiate their NIL rights.

12. Plaintiffs allege that the NIL Recruiting Ban yields few, if any, procompetitive benefits.

13. Plaintiffs allege that, as a direct result of the NCAA's conduct, prospective Division I college athletes and current student-athletes in the transfer portal have suffered and continue to suffer antitrust injury that has artificially limited supply and depressed compensation paid to these athletes for their NIL rights.

14. Plaintiffs therefore allege that the NIL Recruiting Ban is an illegal agreement to restrain and suppress competition in the nationwide market for Division I student-athletes' NIL rights in intercollegiate athletics, in violation of Section 1 of the Sherman Act.

15. NCAA Bylaw 12.11.4.2 (also known as the "Rule of Restitution") states that, if a student-athlete obtains an injunction against the NCAA, and the student-athlete and his or her member institution conduct themselves in conformity with that injunction, the NCAA may nonetheless impose certain penalties on both the student-athlete and the member institution if the injunction is ultimately vacated, stayed, or reversed.

16. Plaintiffs allege that the Rule of Restitution deters member institutions from relying on court orders finding that the NCAA's rules are anticompetitive (or otherwise illegal) and, therefore, deprives courts of the ability to grant effective relief from violations of state and federal law.

17. Plaintiffs allege that, for injunctive relief prohibiting enforcement of the NIL Recruiting Ban to be effective, the NCAA must also be enjoined from enforcing the Rule of Restitution to punish member institutions or student-athletes under the NIL Recruiting Ban.

8

18. Nothing in this Consent Judgment should be deemed or construed to be an admission or evidence of any violation of any statute or law or of any wrongdoing by the NCAA or of the truth of any of the claims or allegations alleged in this case.

19. On February 23, 2024, this Court entered preliminary injunctive relief against the NCAA enjoining enforcement of the NIL Recruiting Ban, as well as the Rule of Restitution as applied to the NIL Recruiting Ban. Dkt. 47. Plaintiffs allege that absent permanent injunctive relief, prospective Division I college athletes and current student-athletes in the transfer portal will continue to suffer irreparable harm from the NIL Recruiting Ban, whether by missing games that cannot be replayed, failing to secure NIL deals or professional opportunities that would otherwise be available, or foregoing enrollment decisions they would otherwise pursue.

20. Plaintiffs allege that the balance of the equities favors issuing a permanent injunction, and issuance of a permanent injunction is in the public interest.

21. Plaintiffs and the NCAA have agreed to resolve fully and finally all claims set forth in this matter by entry of this Consent Judgment.

22. If this Consent Judgment is approved, Plaintiffs fully release the NCAA (including all of its members, officers, directors, trustees, employees and agents) of all claims that were raised in the action.

**Accordingly, it is HEREBY ORDERED, ADJUDGED, AND DECREED:**

23. The foregoing recitals are incorporated and made a part of this Consent Judgment.

24. The NCAA shall take all steps necessary to comply with this Consent Judgment.

25. This Consent Judgment resolves the Plaintiffs' claims with respect to the NIL Recruiting Ban. This Consent Judgment does not affect other NCAA rules or claims not made in this action.

26. The preliminary injunction entered by this Court in this action is hereby made permanent solely to the extent it enjoins the NIL Recruiting Ban. Dkt. 47, at 13. Specifically, the NCAA, and any person or organization acting in concert or participation with the NCAA (including but not limited to officers, employees, staff, directors, trustees, agents, councils, committees, and member institutions acting in concert or participation with the NCAA), are permanently restrained and enjoined from:

   a. enforcing the NIL Recruiting Ban;

   b. enforcing the Rule of Restitution, NCAA Bylaw 12.11.4.2, as applied to the NIL Recruiting Ban following an action taken in reliance on this Court's preliminary injunction or this Consent Judgment;

   c. initiating or maintaining any adverse action, including penalties already negotiated but not yet assessed or imposed, against a student-athlete or member institution regarding conduct arguably covered by the preliminary injunction or regarding conduct that occurred before the entry of the Permanent Injunction but that would have been covered by the Permanent Injunction had it been in force;

   d. retaliating against Plaintiffs or any of their member institutions for bringing this lawsuit; and

   e. taking any action, or adopting any rules, bylaws, or policies, that have the effect of undermining or circumventing the provisions of the Permanent Injunction, including by adopting new rules, amendments, or interpretations thereof that effectively revive the NIL Recruiting Ban.

27. On the Consent Judgment's effective date, the NCAA will explain, on its public-facing website and through documentation provided to each member institution, the effect of the Consent Judgment with language that the parties mutually approve.

10

28. For a period of five years, the NCAA will make public the text of any proposed new Division I rule or Division I rule amendment concerning NIL, on a dedicated webpage (that gives users the option to subscribe to receive automatic updates when new information appears on the webpage), at least 30 days prior to any vote on final approval.

29. For a period of five years, if Plaintiffs contend that a proposed rule or amendment violates the Permanent Injunction, Plaintiffs can notify the NCAA and the NCAA will provide documentation or explanation, upon request, sufficient to show the rationale for the proposed rule and will meet and confer with Plaintiffs in good faith to understand Plaintiffs' concerns and to discuss potential cures for the alleged violation prior to any vote on final approval. The inability of the NCAA and Plaintiffs to reach agreement to cure the alleged violation does not prevent the NCAA from approving the rule or amendment, nor does it preclude Plaintiffs from seeking to invalidate the rule or amendment under the Permanent Injunction.

30. The Consent Judgment does not itself enjoin the NCAA's ability to adopt reasonable rules that prohibit compensation that is not for the student-athlete's or prospective athlete's NIL.

31. The Consent Judgment does not address whether the NCAA can prohibit tampering with current student-athletes who have not entered the transfer portal or otherwise declared their intent to transfer through impermissible recruiting contacts as defined in the NCAA's 2024-25 Division I Manual.

32. Article 4, Section 3, Paragraph 1 of the Injunctive Agreement in the proposed *House*[*] settlement is, on its face, not enjoined by the Consent Judgment and Permanent Injunction. Plaintiffs retain the right to challenge any unreasonable application of that rule, or any other unreasonable rule, in future litigation or under Paragraphs 26 or 29.

---

[*] *See In re College Athlete NIL Litigation*, No. 4:20-cv-03919 CW, ECF 717-01 (N.D. Cal. Mar. 3, 2025).

33. The NCAA retains the right to move to vacate the Permanent Injunction on any ground permitted by law. Plaintiffs retain the right to oppose any such motion.

34. Plaintiffs reserve all rights to challenge rules or amendments not covered by the Permanent Injunction.

35. The NCAA shall pay Plaintiffs their reasonable fees and costs incurred in prosecuting this action in an amount to be agreed upon by the parties. Any disputes over fees or costs shall be resolved by the Court.

36. This Court will retain jurisdiction to resolve all disputes that may arise concerning compliance with, the validity of, or interpretation or enforcement of the terms and conditions of the Consent Judgment and Permanent Injunction.

SO ORDERED this _____ day of _____, 2025.

The Honorable Clifton L. Corker
United States District Judge

SO AGREED:

Date: March 17, 2025

/s/ *[signature]*
Tyler T. Corcoran
Assistant Attorney General, Consumer Protection Division
Office of the Attorney General and Reporter
*Counsel for Plaintiff State of Tennessee*

/s/ _____
Tyler T. Henry
Assistant Attorney General & Manager, Antitrust Unit
Office of the Virginia Attorney General
*Counsel for Plaintiff Commonwealth of Virginia*

/s/ _____
Lizabeth A. Brady
Director, Antitrust Division
Office of the Florida Attorney General
*Counsel for Plaintiff State of Florida*

/s/ _____
Bryan L. Bloom
Senior Enforcement Counsel, Antitrust Bureau
New York State Office of the Attorney General
*Counsel for Plaintiff State of New York*

/s/ _____
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
*Counsel for Plaintiff District of Columbia*

/s/ _____
Rakesh N. Kilaru
Wilkinson Stekloff LLP
*Counsel for Defendant National Collegiate Athletic Association*

SO AGREED:

Date: March 17, 2025

/s/ _____
Tyler T. Corcoran
Assistant Attorney General, Consumer Protection Division
Office of the Attorney General and Reporter
*Counsel for Plaintiff State of Tennessee*

/s/ _____
Tyler T. Henry
Assistant Attorney General & Manager, Antitrust Unit
Office of the Virginia Attorney General
*Counsel for Plaintiff Commonwealth of Virginia*

/s/ _____
Lizabeth A. Brady
Director, Antitrust Division
Office of the Florida Attorney General
*Counsel for Plaintiff State of Florida*

/s/ _____
Bryan L. Bloom
Senior Enforcement Counsel, Antitrust Bureau
New York State Office of the Attorney General
*Counsel for Plaintiff State of New York*

/s/ _____
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
*Counsel for Plaintiff District of Columbia*

/s/ _____
Rakesh N. Kilaru
Wilkinson Stekloff LLP
*Counsel for Defendant National Collegiate Athletic Association*

SO AGREED:

Date: March 17, 2025

/s/ _____
Tyler T. Corcoran
Assistant Attorney General, Consumer Protection Division
Office of the Attorney General and Reporter
*Counsel for Plaintiff State of Tennessee*

/s/ _____
Tyler T. Henry
Assistant Attorney General & Manager, Antitrust Unit
Office of the Virginia Attorney General
*Counsel for Plaintiff Commonwealth of Virginia*

/s/ *Lizabeth A. Brady*
Lizabeth A. Brady
Director, Antitrust Division
Office of the Florida Attorney General
*Counsel for Plaintiff State of Florida*

/s/ _____
Bryan L. Bloom
Senior Enforcement Counsel, Antitrust Bureau
New York State Office of the Attorney General
*Counsel for Plaintiff State of New York*

/s/ _____
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
*Counsel for Plaintiff District of Columbia*

/s/ _____
Rakesh N. Kilaru
Wilkinson Stekloff LLP
*Counsel for Defendant National Collegiate Athletic Association*

SO AGREED:

Date: March 17, 2025

/s/ _____
Tyler T. Corcoran
Assistant Attorney General, Consumer Protection Division
Office of the Attorney General and Reporter
*Counsel for Plaintiff State of Tennessee*

/s/ _____
Tyler T. Henry
Assistant Attorney General & Manager, Antitrust Unit
Office of the Virginia Attorney General
*Counsel for Plaintiff Commonwealth of Virginia*

/s/ _____
Lizabeth A. Brady
Director, Antitrust Division
Office of the Florida Attorney General
*Counsel for Plaintiff State of Florida*

/s/ _____
Bryan L. Bloom
Senior Enforcement Counsel, Antitrust Bureau
New York State Office of the Attorney General
*Counsel for Plaintiff State of New York*

/s/ _____
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
*Counsel for Plaintiff District of Columbia*

/s/ _____
Rakesh N. Kilaru
Wilkinson Stekloff LLP
*Counsel for Defendant National Collegiate Athletic Association*

SO AGREED:

Date: March 17, 2025

/s/ _____
Tyler T. Corcoran
Assistant Attorney General, Consumer Protection Division
Office of the Attorney General and Reporter
*Counsel for Plaintiff State of Tennessee*

/s/ _____
Tyler T. Henry
Assistant Attorney General & Manager, Antitrust Unit
Office of the Virginia Attorney General
*Counsel for Plaintiff Commonwealth of Virginia*

/s/ _____
Lizabeth A. Brady
Director, Antitrust Division
Office of the Florida Attorney General
*Counsel for Plaintiff State of Florida*

/s/ _____
Bryan L. Bloom
Senior Enforcement Counsel, Antitrust Bureau
New York State Office of the Attorney General
*Counsel for Plaintiff State of New York*

/s/ _____
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
*Counsel for Plaintiff District of Columbia*

/s/ _____
Rakesh N. Kilaru
Wilkinson Stekloff LLP
*Counsel for Defendant National Collegiate Athletic Association*

13

SO AGREED:

Date: March 17, 2025

/s/ _____
Tyler T. Corcoran
Assistant Attorney General, Consumer Protection Division
Office of the Attorney General and Reporter
*Counsel for Plaintiff State of Tennessee*

/s/ _____
Tyler T. Henry
Assistant Attorney General & Manager, Antitrust Unit
Office of the Virginia Attorney General
*Counsel for Plaintiff Commonwealth of Virginia*

/s/ _____
Lizabeth A. Brady
Director, Antitrust Division
Office of the Florida Attorney General
*Counsel for Plaintiff State of Florida*

/s/ _____
Bryan L. Bloom
Senior Enforcement Counsel, Antitrust Bureau
New York State Office of the Attorney General
*Counsel for Plaintiff State of New York*

/s/ _____
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
*Counsel for Plaintiff District of Columbia*

 /s/ *Rakesh N. Kilaru*
Rakesh N. Kilaru
Wilkinson Stekloff LLP
*Counsel for Defendant National Collegiate Athletic Association*